Earle v. Thomas.

## WILLIAM EARLE v. IREDELL D. THOMAS.

There being cases where an execution may go out of the county, an execution from another county, though irregularly issued, is not void, but voidable only, and it is the duty of the officer who receives it, to execute it. Such execution not being void, but, at most, irregular, could only be avoided at the instance of a party to it. The claimant of property levied on by virtue of it, could not enquire into its irregularity. (The execution was in the ordinary form of a first execution to the county where judgment is rendered.)

Where the claimant of property taken in execution in 1845, objected to a certified copy of the execution, when offered in evidence, that the execution was not authenticated by the seal of the Court, it was held the objection was properly overruled.

Where the charge of the Court, on the trial of the right of property taken in execution, and claimed by a purchaser from the defendant in execution, was calculated to lead the jury to suppose that the fact of the defendant in execution remaining in possession, was not merely a badge of fraud, a circumstance from which, unless satisfactorily explained, the law would presume fraud, but one which did not admit of explanation, affording, in itself, a conclusive presumption of fraud, or fraud *per se*, it was held that there was error.

To charge upon a hypothesis which has no foundation in the evidence, is error for which the judgment will be reversed, unless it appear that the jury were not misled thereby.

Where the charge of the Court, on the trial of the right of property taken in execution, and claimed by a purchaser from the defendant in execution, was calculated to lead the jury to suppose that the continued possession of the defendant in execution, might have had the effect of divesting the claimant's title, though originally good and valid, not being affected by fraud ; or, at least, of rendering the property subject to be taken in execution in satisfaction of the judgment against the seller thus remaining in possession, when it appeared indisputably in evidence that three years had not elapsed from the inception of the claimant's title, to the time of the levy of the execution, and there was no evidence that the plaintiff's debt was contracted after the possession under the supposed loan commenced, or that it was or could have been contracted on the faith of the continued ownership of the party in possession, it was held that the charge was on a hypothetical case, not warranted by the evidence, and therefore calculated to mislead the jury.

A charge asked must be given, if it be a correct and proper charge, in its application to the facts of the case. But quere ? At all events, a charge asked, which is not correct in all respects, may serve to notify the Court that the general charge is objected to.

What shall be a sufficiently special assignment of error is not susceptible of precise definition. It should be such as to draw the mind to the apprehension of the

particular error intended to be relied on. But what shall be sufficient for the purpose, still remains to be determined upon the particular circumstances of each case.

It has sometimes been said, that a party wishing to take advantage of any error in the charge of the Court, must except. But by this, it is not intended that he shall take a bill of exceptions; for he may attain the same purpose, by asking such instructions as will place the law of the case in a proper light before the jury; which, if refused, will have the effect of a bill of exceptions. (Hart. Dig. Art. 754.)

Appeal from San Augustine. Trial of the right of property in a slave, taken in execution on a judgment in favor of Thomas against White, and claimed by Earle. The judgment was rendered in the District Court of Sabine county, on the 6th of September, 1844. September 19th, execution issued to Sheriff of San Augustine. It did not appear from said execution, that another had been issued, nor that any showing had been made, that the defendant had no property in Sabine. It purported to be under the hand of the Clerk and the seal of his office, and was returned by order of plaintiff, February 25th, 1845. April 25th, 1845, another execution issued, same as the former in all respects, except that it purported to be under the hand of the Clerk, saying nothing about the seal of his office. April 28th, levied on the slave in controversy, pointed out by the plaintiff, in possession of White; Earle claimed the slave and gave bond to try the title. Both executions were attested by the Clerk. Earle gave in evidence a bill of sale of said slave, from White to one Lawhon, dated February 23rd, 1843, and recorded in Sabine on the next day; a bill of sale from Lawhon to Earle, dated September 2nd, 1843, and recorded in Sabine on the tenth of same month; the latter was recorded in San Augustine, March 6th, 1845. White testified that he made the bill of sale to said Lawhon to pass the title to his wife; that being in embarrassed circumstances, he afterwards sold the slave to Earle, and believing the title to be in Lawhon, he caused Lawhon to make the bill of sale to Earle, and he, himself, delivered the same and the slave to Earle. He stated the particulars of the payment by Earle, amounting to

$600. He also testified that Earle, out of his own goodness, told witness's wife, that he would never take away the slave from her (the slave was a woman) as long as she, Mrs. White, lived. Earle was witness's nephew; had considerable means; was a liberal man towards his relations and friends; witness told Earle all about the transfer previously made to Lawhon, and what it was for, and Earle then knew witness's pecuniary condition; Earle has permitted the slave to remain in possession of witness's wife from the time of sale up to the present time, (1854) and has never received anything for her services, except the payment of the taxes on her. Mrs. White was old and had no one to help her, in her family. White's testimony was corroborated by several witnesses. It also appeared that Earle afterwards married an adopted daughter of White.

The plaintiff in execution then introduced in evidence the deposition of Lawhon, to the effect that he did not pay White anything; that the bill of sale to him was made for the purpose of investing the title in Mrs. White, as stated to witness by White; the latter stating to witness at the time, that the father of said White, in his life time, had presented said girl to the wife of said White, and in as much as Mrs. White had never received a title, the right was placed in witness, in order that Mrs. White might receive a title from witness; witness never had the girl in possession. Afterwards White came to witness, saying that he was in debt and was compelled to sell the slave; that he had bargained her to Earle, and that he considered the right in witness, and therefore wanted or wished me to make the title to Earle; to which witness replied that if such was the wish of said White and his wife, he would do so, and did so immediately; witness did not deliver the slave to Earle.

It did not appear from the statement of facts, at what time the slave was removed from Sabine to San Augustine.

The charge of the Court was very full. After instructing the jury on questions respecting the execution and levy, which are not now material, and as to what would cause the sale to

Earle to be presumed in law to be fraudulent, and what not, the charge continued as follows :

The above facts, stated as constituting a good sale, are based upon the supposition that Earle has had the continual possession and control of the negro, either by himself or his agents, as will hereafter be explained.

But if you find such sale to have been made to Earle, but find that White has kept possession of the negro from such sale up to the time of the levy, such possession by White would be a presumption that the sale was fraudulent and void.

If you find from the testimony, that Earle did not give a valuable consideration for the negro, such sale is presumed to be fraudulent, unless you find from the testimony that a bill of sale or deed was taken by Earle, and that said bill of sale or deed was proved and recorded in the office of the County Clerk, or unless possession was taken by Earle, of said negro, and continued.

And although you may find that Earle was the purchaser in good faith, and for value, and with all circumstances necessary to vest the property in him, as above explained ; yet if Earle, after said sale, loaned or permitted White to remain in possession of said negro, without consideration, for three years successively, immediately before the levy in this case was made, the negro was subject to be levied upon in this case, unless you find from the testimony, that the loan or permission to White, to keep said negro in possession, was by deed, in writing, proved and recorded.

But if there was a loan or permission to White, by Earle, made in good faith and for a sufficient consideration, though without deed recorded, the negro was not subject to levy.

If you find from the above charge, that it was necessary to have any instrument recorded to protect the interest of Earle, it was necessary to have such instrument recorded in San Augustine county, if White had possession of said negro in San Augustine county within four months after White's removal to said county with said negro ; and if not so recorded, within

four months after such removal, and before the levy in this case, the negro was subject to the execution.

In the absence of the above named facts, from which the loan presumes fraud, you cannot presume that a fraud was committed. Neither is it necessary for him who alleges fraud to positively prove it. But if you are satisfied, from all the facts proved in the case, that any party has been guilty of fraud, that will be sufficient proof of fraud.

The following charge was asked by defendant and refused by the Judge :

If the jury believe from the evidence, that the slave originally belonged to White, and that Earle bought her of White for a valuable consideration, in money or other property, and in good faith, not knowing that White, by the sale, intended to hinder, delay or defraud his creditors, and received a title from Lawhon, who previously had received, without any consideration, a title from White, and White delivered the negro to Earle in pursuance of said sale, the title of the negro vested absolutely in Earle, and he had a right then to lend her to whom he pleased.  And the person having her in his possession could carry her to any county in the State, and she would not be liable to levy by White's creditors.

Verdict and judgment for the plaintiff in execution.   Motion for new trial overruled.

Several exceptions were taken to the admission of testimony.   The only one noticed by this Court was to the admission of the certified copy of the execution on which the levy was made, on the ground that the execution did not appear to have been authenticated by the seal of the Court.

The assignment of errors, omitting assignments not noticed, was as follows :

1st. The Court erred in admitting the testimony of plaintiff, objected to by defendant.

2nd. The Court erred in the charge of the law given to the jury.

3rd. The erred in refusing the charge asked by the defendant.

4th. The Court erred in overruling the defendant's motion for a new trial.

O. M. *Roberts*, for appellant.  I. I find it stated that at Common Law, *fieri facias* did not, in the first instance, issue out of the county of the trial ; also, if issued out of county, quashed in some Courts.  (4 Littell, 375–76.)  Court of Common Pleas cannot issue out of the county.  (People v. Van Epps, 388.)  I find no authority directly in point.

II. The executions lack a seal ; last one not tested ; both executions issued to San Augustine, without any evidence that there was not sufficient property in Sabine county.  Upon the last ground nothing further will be added.

It is contended that the writ levied on the slave was void. (Const. Rep. Art. 4, Sec. 13, Hart. Dig. 32 ; General Act, 1st Cong. 198 ; 3 Bouvier Institutes, 68, 198 ; 2 Serg. & R. 394 ; 3 Chit. Gen. Prac. 4, 106.)

Writ issued without seal is void.   (8 Bacon, 69 ; Frosch v. Schlumpf, 2 Tex. R. 422.)

This writ is signed only, not attested by the Clerk, as required by Statute.  It is not necessary to point out the distinction between them to this Court.

III. The Court erred in the charge to the jury, and in refusing the charge of the defendant.  The part of the charge objected to is that which relates to the right of property in the slave, and the matters of fraud thereon.

The Court instructed the jury, that White's possession "would be a presumption that the sale was fraudulent and void."  What sort of presumption ? conclusive or disputable ? "presumption" of law or fact ?  It will be noticed too, that in no part of the charge, before or after this, is this expression qualified or explained.  Nor is it any where indicated, how it may be explained or rebutted.  The whole tendency of it is to make the possession of White, *per se*, determine the controversy.  A very different idea would have been conveyed to the mind of the jury, had they been told that the law did not pre-

sume fraud from the possession of White; that White's possession was a badge of fraud; evidence, admissible as tending to establish it, but that, like any other fact, it might be rebutted by proof of any facts which would reasonably explain or account for it. (Bryant v. Kelten, 1 Tex. R. 415.)

One of the greatest objections to the charge, however, is that it misleads and embarrasses the mind of the jury, by bringing extraneous matters, such as hypothesis based on want of consideration in sale to support Earle's claim made good by recording; recording bills of sale and written instruments in Sabine, where slave was, and San Augustine, &c., within four months; loan of slave for hire three years; loan of slave three years without hire; possession of Earle with its varied contingencies; all tending to confuse the jury and mislead them from the true issue, the validity of the sale at the time it was made, as evidenced by the previous and subsequent facts in evidence. (Thompson v. Shannon, 9 Tex. R. 536; Hampton v. Dean, et al., 4 Id. 455; McGreal v. Wilson, 9 Id. 426.)

It is difficult to portray those results on paper to this Court, but the counsel of appellant, being satisfied that such had been the case at the trial, and then wishing to disinter the case and concentrate the minds of the jury upon the issue made by it, and considering what facts the evidence fixed, beyond reasonable controversy, and what were doubtful or controverted, presented to the Court the charge, which was refused.

It is presumed that the objection to this charge is to that part of it which refers to the lending. The object of that part of it was to reject from the case that whole matter as immaterial.

It could not be any part of the case to enquire whether or not Thomas had contracted this debt on the credit of this slave, possessed by White, since the sale to Earle, because the note on which the judgment was founded was given by White to Thomas just two years before the judgment, 6th September, 1842, and one year before the sale to Earle, which fact was

well established by the evidence of Thomas, and which may
be seen by the recital and interest calculated in the judgment,
and was well understood, and could not be contested.   There
was no question but that the slave belonged to White when
the credit was given, and the only question, then, in that con-
nection, was, had White received a fair equivalent, in good
faith, for the slave when he parted with it as stated in the
charge asked ; if so Thomas was not hindered, delayed or de-
frauded by the slave remaining with White after sale.

*Henderson & Jones*, for appellee.   Voidable execution can
only be excepted to by a party to the execution, and not by a
stranger.   (Bennet v. Gamble, 1 Tex. R. 129 ; 4 Stew. & Por-
ter, 237.)

As to the executions lacking a seal, this could not be told
from the copies ; neither did the District Court Act of 1836
require them to be under seal ; nor did the law provide for a
seal for the District Courts ; nor have all our District Courts
a seal.   As to the last execution not being attested by the
Clerk, this is a mistake ; it is so attested.   But these objec-
tions to the executions, if they were objections, and existed,
would not render the executions void.

It is assigned for error that " the Court erred in the charge
of the law given to the jury."   This assignment is exception-
able for not specifying the error in the charge, and cannot,
therefore, be considered.   There are some twenty-five legal
propositions in the charge, contained in some eighteen sepa-
rate paragraphs ; and is it to be expected that the Court will
hunt through all these propositions to see if there is any error
in the charge?   The party must put his finger on the error ob-
jected to.   (Simons & Smith v. Chandler, 7 Tex. R. 568 ; Hil-
lebrant v. Brewer, 520, 569 ; 11 Id. 577.)

It is assigned for error that " the Court erred in refusing
the charge asked by the defendant."   There was no error in
this, for the Court had already fully charged the law on the
point in the charge requested.   Moreover, the conclusion of

the charge is clearly wrong, in the general terms in which it is stated, and the Court could not be called upon to give it in those terms; neither could the Court be required to amend the charge so as to make it unexceptionable.   (5 Tex. R. 238.)

WHEELER, J.   The appellant has no cause to complain of the ruling of the Court, upon the question of the right of the claimant, to impeach the validity of the execution sent to San Augustine County.   The law under which the execution issued, does not provide in what manner the facts shall be made to appear, which will authorize the sending of the execution out of the county; nor does it declare that the execution shall be void, if such facts did not exist.   The question of the validity of executions, thus sent to another county, has been repeatedly before the Supreme Court of Kentucky.   And in the case of Cox v. Nelson, (1 Monroe, 94,) where the previous cases are cited, the Court held, that, there being cases, where an execution may go out of the county, an execution from another county, though irregularly issued, is not void, but voidable only, and it is the duty of the officer who receives, to execute it.   (And see Roberts v. Sydnor, 13 Tex. R. 598.) The execution not being void, but at most, irregular, could only be avoided at the instance of a party to it.   The claimant of the property levied on, therefore, could not inquire into the regularity of the execution.

The objection to the transcript from Sabine county, that it did not appear that the executions copied into it, had the seal of the Court attached, we do not think well taken.   There was no law at that time which required that the execution should be authenticated by the seal of the Court.   These executions, however, purport to have been so authenticated; and there is little doubt that, in fact, they were; and that the Clerk in copying, omitted to copy the seal.   But though issued without a seal, they were not, on that account, void.

The only remaining question in the case, which it is material to consider, arises upon the rulings of the Court, in giving and

refusing instructions. And in these we think there is error. The instructions given, in respect to the effect of the continued possession of the defendant in execution, were well calculated to mislead the jury, in two respects ; in the first place, in leading them to suppose that such possession was not merely a badge of fraud, a circumstance, from which, unless satisfactorily explained, the law would presume fraud, but one which did not admit of explanation, but afforded, in itself, a conclusive presumption of fraud, or fraud *per se* ; and in the next place, by charging upon an hypothesis which had no foundation in evidence, leading the jury to suppose, that the continued possession of the defendant in execution, might have had the effect of divesting the plaintiff's title, though originally good and valid, not being affected by fraud ; or, at least, render the property subject to be taken in execution in satisfaction of the plaintiff's judgment, when it appeared indisputably in evidence, that three years had not elapsed, from the inception of the plaintiff's title, to the time of the levy of the execution ; and there was no evidence that the plaintiff's debt was contracted after the possession under the supposed loan commenced, or that it was, or could have been contracted on the faith of the continued ownership of the party in possession. That the instructions, in question, in the form in which they were expressed, and especially that in reference to the effect of possession, upon the question of fraud, were well calculated to mislead, we cannot doubt. Had the instruction asked by the claimant been given, it might have had the effect to counteract the erroneous impressions which the jury would be likely to receive from the charge of the Court. At least, in that event, the party would not have had cause to complain. But it was refused ; and the charge of the Court remained unqualified. It is not perceived that, as applied to the facts of this case, (and so it is, of course, to be understood,) the charge asked was not in conformity to law. It, at least, was sufficient to indicate dissatisfaction with the charge, in those respects indicated, and to call for its reconsideration by the Court, before

the jury retired. Not having had that effect, we think the refusal of it may well be assigned as error.

It is objected on behalf of the appellee, that the assignment of error is, in this particular, too general. It, however, is sufficiently specific, in respect to the charge refused; and that, we think, sufficiently indicates in what respect the charge given was objected to as erroneous. It would have been better, if the assignment in reference to the charge given had been more specific. But the charge is so framed as that it would not, perhaps, very readily occur to counsel, how else to make the assignment, with the brevity and directness desirable in an assignment of errors; for the charge is not objectionable, so much on account of the abstract legal propositions announced, as on account of the form in which they are announced, considered in reference to the evidence in the case, and the impressions they were calculated to make upon the minds of the jury. What shall be a sufficiently special assignment of error, is not susceptible of precise definition. It should be such as to draw the mind to the apprehension of the particular error intended to be relied on. But what shall be sufficient for this purpose, still remains to be determined upon the particular circumstances of each case. In the present case, the error complained of is suggested by the instruction refused; and it is still more distinctly brought to view, by considering that instruction in reference to the repetition of the most objectionable part of the charge, in the form of a distinct and independent proposition, disconnected from, and immediately following the general charge of the Court. It thus receives a prominence, which could scarcely escape attention. And where the errors complained of are, apparently, of so controlling a character, they cannot, we think, be overlooked or disregarded, though the assignment of error is not as specific as it might have been.

It has sometimes been said, that a party wishing to take advantage of any error in the charge of the Court, must except. But by this it is not intended that he shall take a bill of exceptions; for he may attain the same purpose, by asking such in-

structions as will place the law of the case in a proper light before the jury ; which, if refused will have the effect of a bill of exceptions. (Hart. Dig. Art. 754.) That was attempted in this case ; and though imperfectly done, we think it sufficient to entitle him to have the errors complained of revised. The rulings of the Court assigned as error were made a ground of the motion for a new trial ; which ought, we think, to have on that ground, been granted ; and its refusal is assigned as error.

The present is not unlike the case of Lee v. Hamilton, (12 Tex. R.) where the judgment was reversed upon similar grounds. And we think the general practice of the Court requires a like action in this case. The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.