HARRIET E. SMITH ET ALS. v. D. H. REDDEN.

(Case No. 2823.)

1. CHARGE OF THE COURT.— It is error to charge the jury upon a hypothesis which has no foundation in the evidence adduced in a cause.

2. MINORS — SPECIAL GUARDIAN.— Minors could not, under the statute (Pas. Dig., arts. 6969, 6973), sue or defend by next friend. Where there was no regular guardian, the law required the appointment of a special guardian for them. 45 Tex., 550; 50 Tex., 511; id., 302.

3. EVIDENCE.— Statements of the husband concerning the wife's separate property, made when she was not present, are not admissible in evidence against her, in a suit brought by the wife for the property. 8 Tex., 178; 14 Tex., 583.

4. TENANT — PURCHASER IN GOOD FAITH.— A tenant is chargeable with notice of all equities of his lessor in the property leased. He cannot repudiate his tenancy and become an innocent purchaser in good faith, as against his lessor, of property held by him as tenant.

APPEAL from Navarro. Tried below before the Hon. F. P. Wood.

This suit was instituted on 8th July, 1873, by Harriet E. Smith, surviving widow of John E. Smith, deceased, with her husband, David B. Smith, and Rena A. Smith and Anthony N. Smith, minors, children of said John and Harriet, suing by their "*prochein ami*," David B. Smith, against D. H. Redden, for the recovery of a tract of land of four ten-acre lots in Navarro county.

The plaintiffs alleged that Harriet, Rena and Anthony were the lawful heirs of John E. Smith, the lawful owner of the land. That in 1859 John purchased from Wm. M. Love, then the owner of the land, for the price of $440, of which $40 was paid down, and upon the payment of the balance Love agreed to make him a title to the land, and under this agreement John went into possession of the land in good faith and made valuable improvements; that on 25th March, 1863, he made a further payment to Love of $100 on the land, for which Love receipted, expressing therein its purpose. That John and his family resided upon the land until the death of John in 1864. That in 1868 the land was sold under an execution upon a judgment against Wm. M. Love as his property, and purchased by G. H. Love, the plaintiffs

being then in possession of the land. That plaintiffs rented the land to defendant Redden for the year 1869, and he went into possession of it as their tenant. That afterwards, with full knowledge of their rights and claim, Redden purchased the land from Wm. M. Love, who, as attorney in fact for G. H. Love, executed to him a conveyance of it, and then Redden repudiated his tenancy, and held and still holds the land adversely to plaintiffs. They pray for a writ of possession, and tendering $340 and interest, which they allege is the balance due on the land, ask that they have judgment for the land and specific performance.

The defendant answered, denying the allegations of the petition, pleading the limitation of three years, suggesting valuable improvements made by him, to the value of $1,000, and praying judgment.

The cause was submitted to a jury, who returned a verdict for the defendant, and judgment was rendered in accordance therewith.

The plaintiffs moved for a new trial, which being overruled, they appealed.

Upon the trial, the facts as set out in the plaintiffs' petition were supported substantially by the plaintiffs' witnesses. The agreement with Love for the purchase of the land, the possession of it by Smith and his family, and the improvements made by him, and the payment to Love of $40 in a yoke of oxen, were proved. Smith joined the army in 1862, taking his wife and children to her father, and renting out the land. In 1863 Smith sent $100 to a witness, to be paid to Love on the land, for which Love receipted; the receipt was lost, but its contents were proven as follows: "Received of John Smith $100, a part payment on forty acres of land." Signed by Love. Smith was killed in battle in 1864. In 1865 Harriet and the children moved back on the land, and continued in possession of the premises till 1868, when it was rented to Redden. Harriet Smith married D. B. Smith in 1867. The improvements put on the land by John Smith were worth $500. The plaintiffs proved by three witnesses that they had seen and examined the receipt given by Love to Smith,

and Love's signature to it to be genuine; and that it recited it was in part payment for the land. It was also proved that Redden had been informed, when he rented the land, of John Smith's purchase. Plaintiffs then tendered in court the balance due on the purchase money.

Defendant then gave in evidence a judgment in favor of Sorley, Smith & Co. against Wm. M. Love, recorded in Navarro county in 1867, and a deed from the constable to G. H. Love, for land sold under the judgment and execution, which embraces the land in controversy, dated 15th December, 1868; also a deed to himself from G. H. Love, by his attorney in fact, Wm. M. Love, for fifty acres of land, including this land, dated 14th April, 1869.

Redden testified that Wm. M. Love told him plaintiffs had no title to the land, and that he must pay rents to him; that Smith had never paid anything for the land, and that D. B. Smith had referred him to Wm. M. Love for information respecting the title to the land.

Williamson, a witness for the defendant, testified that in the spring of 1862 he heard John E. Smith tell William M. Love, as he was about leaving for the army, that he was not able to pay him for the land, and that he would let him have it back with the improvements, which would pay him for the rent; that William Love agreed to take the land back, stating that he could have it when he came back, and should be able to pay for it. This witness also testified that the yoke of oxen was not a payment on the land.

It was also proven that D. B. Smith bid for the land at the constable's sale.

D. B. Smith testified that he never referred Redden to William M. Love for information in regard to the title to the land. William M. Love died in 1873.

These are the material facts developed in the testimony.

It is shown by bills of exceptions that plaintiffs objected to the introduction of proof of the statements of William M. Love, about the title to the land, not made in presence of the plaintiffs, and also excepted to the proof that D. B.

Smith referred Redden to Love for information; but these objections were overruled.

*Sam R. Frost,* for appellants.

*William Croft,* for appellee.

QUINAN, J.— The charges given by the judge are voluminous, and it is not necessary to recite them all.

Among others, he gave the following, which are excepted to:

No. 2. If the jury believe from the evidence that the defendant was a purchaser in good faith, and paid his money for the land after being informed by the person or persons to whom he was referred, that William M. Love was the one to buy from, and who could tell him about the title, then the jury will find for the defendant.

No. 4. A receipt for a part payment on land in Confederate money is not notice to other parties knowing nothing of its contents, unless the same has been duly recorded; and if the jury should believe from the evidence that there was no other payment made, then such payment could effect no one having no notice of it, and the jury will find for the defendant, if he had no notice of it proved upon him.

There are nine assignments of error, of which, however, it will only be necessary to notice the second, fourth, fifth and sixth.

The second assignment of error is that the court erred in its second charge to the jury.

The fourth, that the court erred in its fourth charge to the jury.

The fifth and sixth relate to the admission of the testimony, over the objections of the plaintiffs, that David B. Smith referred Redden to Love for information in respect to the title, and to the statements of William M. Love.

The second assignment of error is well taken. It was manifestly erroneous to instruct the jury, as in effect they are instructed, that David B. Smith, by referring Redden to

Love for information, and by Love's statement to Redden, "that he was the one to buy from," warranted the jury in finding a verdict for the defendants if they believed Redden bought in good faith and paid his money for the land. It is quite too clear for comment that what David Smith did, or what Love said, not in the presence or hearing of Harriet or her children, could not in the least degree affect their title to the land.

The fourth charge is equally erroneous — that the jury should find for the defendant if he had no notice proved upon him of the receipt for a part payment on the land in Confederate money, and that no other payment had been made. It is not proper to charge upon a hypothesis which has no foundation in the evidence. Earle v. Thomas, 14 Tex., 583. Indeed, it is not easy to discover upon what ground these charges were given. Redden could not possibly be a purchaser of the land without notice. Undeniably it had been in the undisputed possession of the plaintiffs for years. They had rented it to him and put him in possession. He was chargeable with notice of every fact he might have discovered by applying to the parties in possession. And the testimony, uncontradicted, of the witness Petty is, that before Redden rented the place he was informed that "John E. Smith in his life-time had purchased the land from Love, had paid part of the purchase money, and that the land had been occupied by Smith and tenants under him since his purchase, to the time of Redden's renting. Wade on Notice, p. 116, and cases cited, note 1.

The admission of the testimony of what David Smith said or did, or as to the statements of Love in respect to the title, not made in the presence of the plaintiffs, Harriet or her children, was error. These were clearly "*res inter alios acta.*" David Smith could say or do nothing to impair the title of Mrs. Smith or her children. Nor could the information in disparagement of it by Love, communicated to Redden, have the slightest weight. It was of itself worthless, and Redden had already been better informed, and had better means of knowledge.

For these errors of the judge in his charge, and the admission of incompetent testimony, the judgment must be reversed.

But there is also another fundamental error which, though not assigned, will require a reversal of the judgment.

The minors plaintiff are not represented by their guardian, either regular or special.

When this suit was instituted, minors could only sue, or defend, by their guardian. If there were no regular guardian the law required the appointment of a special guardian for them. Pas. Dig., arts. 6969, 6973.

And so it has been repeatedly decided. Pucket v. Johnson, 45 Tex., 550; Ins. Co. v. Ray, 50 Tex., 511; Bond v. Dillard, 50 Tex., 302.

At the present term of the supreme court, in Brooke v. Clark, it is again so held, in a case where judgment was rendered in favor of a minor suing by a next friend. In this case the court says: "This determination has not been reached without due regard to the fact that in this particular case it may materially affect the rights of the plaintiff. That the law should be thus held, however, would perhaps not be severely questioned had the minor plaintiff failed in the action."

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.