J. T. BRACKENRIDGE ET AL. v. W. E. COBB ET AL.

No. 76.

1. **Execution Sale — Simultaneous Issuance of Executions to Different Counties.**—Executions issued to different counties at same time and on the same judgment. Under one of these the levy and sale in question was made, and levies subsequent to the first levy were made under the others. *Held*, that such irregularity did not render the levy and sale in question void; and these matters not appearing to have depreciated the price of the property sold, did not afford ground for setting aside the sale after the lapse of more than four years.

2. **Same—Purchase at Execution Sale not Abandoned by Subsequent Purchase.**—The purchaser at an execution sale does not abandon his title thereunder by subsequently buying the land under a void deed of trust made by the defendant in the execution, where the latter purchase was in compromise of litigation about the validity of the deed of trust, and was intended to strengthen the title already acquired.

3. **Same—Sheriff not Disqualified by Relationship, When.**—A sale under execution is not void because the sheriff making the levy and sale is a brother-in-law to one of the defendants in the execution.

4. **Same — Equitable Relief Against Execution Sale Denied, When.**—Purchasers under a junior judgment are not entitled to equitable relief against a prior and valid execution sale of the property, where they have delayed more than four years in bringing suit, and do not offer to do equity by tendering the purchase money and expenses paid by the prior purchaser.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

The conclusions of fact found by the trial court, and adopted in the opinion rendered on this appeal, are as follows:

Vol. II. Civil—11

"1. That on October 9, 1885, the First National Bank of Austin, of which plaintiff is president, recovered in the District Court of Travis County a judgment for $13,071.12, besides costs and interest, against the Stone Cattle and Pasture Company, J. W. Wilson, John H. Stone, J. W. Sacra, H. Hulen, D. H. Phillips, T. M. Rolls, and F. J. Hall, upon a note dated December 4, 1884, executed by said defendants and S. A. McAdams.

"2. That an execution was issued on said judgment within less than twelve months after its rendition, directed to the sheriff or any constable of Travis County, and that the same was returned, not executed, because no property found.

"3. That an alias execution issued upon said judgment October 12, 1889, directed to the sheriff or any constable of Cooke County, which was on the 31st of October, 1889, levied on the lands in controversy, as the property of J. W. Wilson, and the same were sold under said execution to plaintiff for the sum of $137, and for which said sheriff executed to plaintiff a deed on December 3, 1889.

"4. That afterwards, on March 8, 1890, another execution issued on said judgment, directed to the sheriff or any constable of Cooke County, which was levied upon said lands on March 10, 1890, as the property of said J. W. Wilson; and upon the first Tuesday in April, 1890, the same were sold under said execution and levy to said J. T. Brackenridge for $45, and upon the same day of said sale said sheriff executed and delivered to said Brackenridge a deed to said lands. At both of said sales Brackenridge purchased for the benefit of the bank, and took the deeds in his own name as a matter of convenience.

"5. An abstract of said judgment was filed for record, and recorded in the judgment record of Cooke County, on October 10, 1885, and was also indexed in the index to said record.

"6. That on the 4th day of April, 1885, J. W. Wilson executed to C. R. Smith, trustee, a deed of trust upon about 6000 acres of land, including the lands in controversy, purporting to be made to secure a note for $43,000, of that date, executed by said Wilson to Gregory, Cooley & Co. Said deed of trust was duly recorded in the mortgage record of Cooke County on same day it was executed.

"7. That on August 28, 1885, in the District Court of Wise County, Thomas Trammell & Co. recovered judgment for the sum of $8924.70, with interest and costs, against the Stone Cattle and Pasture Company, J. W. Wilson, John H. Stone, F. J. Hall, H. Hulen, J. W. Sacra, Phillips, Rolls & Co. (a firm composed of D. H. Phillips, J. M. Rolls, Richard McCubbin, S. A. McAdams, and Isaac Cloud), W. E. Cobb, and the Ritchey-Gooch Live Stock Company. Said judgment recites that the Stone Cattle and Pasture Company was the principal, and that said J. W. Wilson, John H. Stone, F. J. Hall, H. Hulen, J. W. Sacra, and Phillips, Rolls & Co. were sureties, and that W. E. Cobb and the Ritchey-Gooch

Live Stock Company were endorsers, upon the note on which judgment was obtained; and it directed that execution upon said judgment issue; first, against the property of the principal; second, against the property of the sureties; and third, against the property of the endorsers.

"8. That on the 28th day of September, 1885, the clerk of the District Court of Wise County, acting under instructions of the attorneys of Thomas Trammell & Co., issued six executions upon the judgment mentioned in the next preceding section of these conclusions, viz., one to Wise, one to Cooke, one to Wichita, one to Baylor, one to Archer, and one to Wilbarger County. Said executions were issued in the order above named; that is, first to Wise, next to Cooke, next to Wichita, next to Baylor, next to Archer, and next to Wilbarger. The execution to Wise described the defendants as the 'Stone Cattle and Pasture Company et al.,' and commanded the sheriff to make the amount of the judgment out of the 'Stone Cattle and Pasture Company et al.' It did not state when it was returnable, and the sheriff's return was to the effect that it came to hand on the same day issued, and was returned on the same day, 'No property found in Wise County, owned by the Stone Cattle and Pasture Company, subject to execution.'

"9. The execution to Cooke was returnable within sixty days, and commanded the sheriff, 'of the goods and chattels, lands and tenements, of the Stone Cattle and Pasture Company, as principal, and J. W. Wilson, John H. Stone, F. J. Hall, H. Hulen, J. W. Sacra, Phillips, Rolls & Co. (a firm composed of D. H. Phillips, J. M. Rolls, Richard McCubbin, S. A. McAdams, and Isaac Cloud), as sureties, and W. E. Cobb and the Richey-Gooch Live Stock Company, as endorsers,' to make the amount of said judgment. It mentioned the issuance of execution to Wise County, but did not mention the issuance of the other executions on same day. This execution was placed in the hands of A. M. Hill, sheriff of Cooke County, on September 29, 1885, and was levied on the same day upon all the lands described in the deed of trust from J. W. Wilson to C. R. Smith, mentioned in section 6 of these conclusions; and on the first Tuesday in November, 1885, said sheriff, by virtue of said execution and levy, sold said lands, in lots and parcels, to W. E. Cobb & Co., for prices aggregating $36; and said W. E. Cobb & Co. having complied with their bids, said sheriff, on December 21, 1885, executed, acknowledged, and delivered to said W. E. Cobb & Co. a deed to said lands, but which deed was not filed for record in Cooke County until the 17th day of April, 1886.

"10. That the execution to Wichita County was precisely like the one to Cooke, and was placed in the hands of the sheriff of Wichita County on the 1st day of October, 1885, and was levied on the same day on certain brands of cattle, as the property of the Stone Cattle and Pasture Company, as they ran upon the range, and by range levy; also upon the fence and fence posts around the pasture of said company; and also upon

60,000 acres of land in said county, as the property of said Stone Cattle and Pasture Company. The sheriff's return stated that this execution is returned for want of time for sale, but this return is not dated. The execution to Archer is precisely like the one to Cooke, and was placed in the hands of the sheriff of Archer County on October 1, 1885, and on the following day was levied upon personal property of the Stone Cattle and Pasture Company, subject to a prior levy in favor of J. J. Lang; the return upon said execution showing that the sale of the property did not satisfy Lang's execution. The return further states that it was again levied, on the 16th day of October, 1885, upon some real estate, as the property of the Stone Cattle and Pasture Company, and the same was advertised to be sold on the first Tuesday in December, 1885, but that the sheriff was afterwards instructed by W. E. Cobb's attorneys to release the levy and return the execution. The execution to Wilbarger was like the one to Cooke, and was placed in the hands of the sheriff of Wilbarger County on October 1, 1885, but the return does not show that anything was ever done with it. The execution to Baylor County was like the one to Cooke, and was endorsed, ' Returned by order of plaintiff's attorneys,' viz., Cowan & Perry.

" 11. That the deed of trust executed by J. W. Wilson to C. R. Smith on April 4, 1885, to secure Gregory, Cooley & Co. in the payment of said $43,000 note, was fraudulent and void as to creditors.

" 12. That on May 4, 1886, W. E. Cobb & Co. instituted suit in the District Court of Cooke County against Gregory, Cooley & Co., C. R. Smith, and J. W. Wilson, to recover the lands described in the trust deed from J. W. Wilson to C. R. Smith, and which had been purchased by W. E. Cobb & Co. at the sale under the execution issued on the judgment in favor of Thomas Trammell & Co. against the Stone Cattle and Pasture Company, recovered in District Court of Wise County August 28, 1885, alleging that said deed of trust from Wilson to Smith was fraudulent, and praying an injunction, which was granted, prohibiting said Smith, who had advertised said lands for sale under said deed of trust, from selling the same.

" 13. That W. E. Cobb & Co. was a partnership composed of W. E. Cobb and the Ritchey-Gooch Live Stock Company, and that after the execution in favor of Thomas Trammell & Co. against the Stone Cattle and Pasture Company, issued upon the judgment recovered in Wise County, August 28, 1885, and was levied upon the lands described in the trust deed from Wilson to Smith, but before the sale under said execution, said W. E. Cobb & Co. paid off said judgment to save themselves, because they were liable as endorsers on the note upon which said judgment was rendered, and thereby became the owners of said judgment; and that afterwards the Ritchey-Gooch Live Stock Company sold to defendant J. J. Lang its interest in said judgment, and the lands sold thereunder,

for which said Lang paid to the Ritchey-Gooch Live Stock Company the sum of $4500.

" 14. That afterwards, on the 17th day of February, 1887, W. E. Cobb & Co., J. J. Lang, Gregory, Cooley & Co., and J. W. Wilson entered into a written agreement whereby the suit instituted by W. E. Cobb & Co. against Gregory, Cooley & Co., C. R. Smith, and J. W. Wilson was compromised; said agreement providing that W. E. Cobb & Co. should dismiss their suit, and that C. R. Smith should proceed to sell said lands under said deed of trust, and that at said sale Gregory, Cooley & Co., W. E. Cobb & Co., and J. J. Lang would purchase said land, if it did not bring more than $50,000, and divide the same between them as follows: viz., said Lang and W. E. Cobb & Co. should have 3032 acres, and Gregory, Cooley & Co. should have 2900 acres; and that should said land be bought by some other person, the money paid for same should be divided between W. E. Cobb & Co., J. J. Lang, and Gregory, Cooley & Co. in the proportion above mentioned. Said agreement also stipulated that W. E. Cobb & Co. and J. J. Lang should release said J. W. Wilson from various debts they had against him, amounting in the aggregate to more than $60,000. In pursuance of this agreement, said land was sold under said deed of trust on March 17, 1887, and purchased and divided as therein contemplated; the lands in controversy being the portion deeded to defendants in said division.

" 15. That afterwards, in 1887, the defendants instituted suit in the District Court of Baylor County against W. F. Somerville et al., claiming in said suit that the judgment in favor of Thomas Trammell & Co. against the Stone Cattle and Pasture Company et al., recovered in the District Court of Wise County on August 28, 1885, was a lien on 70 sections of land in said county belonging to the Stone Cattle and Pasture Company, subject to the lien of a judgment in favor of the Boatman Savings Bank against said company, under which said lands had been sold and bought by W. F. Somerville et al., and praying that said sale be set aside on account of irregularities, inadequacy of price, etc. This suit terminated during the year 1889 in favor of plaintiffs therein. Said sale was set aside, and a resale of the land ordered; and out of this, by way of compromise with the parties, the plaintiffs in said suit recovered one-third interest in said 70 sections of land; said lands being school sections, and are encumbered, for purchase money due the State, at the rate of one dollar per acre for the dry, and two dollars per acre for the watered sections.

" 16. That A. M. Hill, the sheriff who sold the land under the execution in favor of Thomas Trammell & Co. against the Stone Cattle and Pasture Company et al., at which sale W. E. Cobb & Co. became the purchasers, was a brother-in-law of D. H. Phillips, one of the defendants in said execution.

" 17. That when W. E. Cobb & Co. purchased the lands in contro-

versy at the execution sale on the first Tuesday in November, 1885, neither they nor their attorney, who attended said sale, and bid in said lands for them, had any knowledge that the trust deed executed by J. W. Wilson to C. R. Smith was fraudulent; that under the circumstances attending said sale, the price paid by W. E. Cobb & Co. was not inadequate; that the irregularities herein before referred to did not in any manner conduce to the small price for which said lands sold; that said W. E. Cobb & Co. acted in perfect good faith in the purchase of said lands, and were not in any manner responsible for the irregularities referred to, ·or for the small price for which said lands sold; that the fact of said deed of trust upon said lands being of record, and for an apparently valid debt, was the real cause of the small price for which said lands sold.

" 18. That said lands, at the date of said sale, were worth eight or ten dollars per acre; and on the 4th day of April, 1885, when Wilson executed said deed of trust to C. R. Smith, he was insolvent, and has ever since been so.

" 19. That defendants Cobb and Lang, on June 24, 1887, borrowed of the Texas Loan Agency $16,000, and secured the same by deed of trust upon the lands in controversy, and that said loan agency is an innocent purchaser, as alleged in plaintiff's petition.

" 20. That while the deed of trust from J. W. Wilson to C. R. Smith was fraudulent as to creditors, J. W. Wilson nevertheless owed Gregory, Cooley & Co. a large amount of money; and, in the compromise with Gregory, Cooley & Co., defendants acted in good faith, believed they were securing a perfect title to the portion of the land they got, and so believed when they mortgaged the same to the Texas Loan Agency.

" 21. That defendants have had to incur an expense of two thousand dollars, including their attorneys' fees, in the prosecution of the suit instituted by W. E. Cobb & Co. against Gregory, Cooley & Co., C. R. Smith, and J. W. Wilson."

*Davis & Harris*, for appellants.—1. The court erred in holding that the abstract of the judgment of the District Court of Travis County in favor of the First National Bank of Austin against the Stone Cattle and Pasture Company, J. W. Wilson, et al., through which the plaintiffs claim, was not indexed so as to create a lien upon the lands in controversy, and in holding that said abstract was not so recorded and indexed as to give the said First National Bank of Austin a lien upon said lands.   Rev. Stats., arts. 3115–3159; Gullet v. Oliver, 14 S. W. Rep., 451; Nye v. Moody, 70 Texas, 434; Nye v. Gribble, 70 Texas, 458; Miller v. Koertge, 70 Texas, 162; Bennett on Lis Pendens, sec. 119; Freem. on Judg., sec. 347.

2. The suing out of the five executions from the District Court of Wise County upon the judgment in favor of Thomas Trammell & Co., one being to Cooke, one to Wichita, one to Archer, one to Baylor, and one

to Wilbarger County, and the attempt to enforce all of said executions at one and the same time, rendered the execution to Cooke County and the proceedings thereunder fraudulent and void as to the other creditors of said J. W. Wilson. Rice v. Miller, 70 Texas, 615; Freem. on Ex., secs. 206–209, 270; Brandt on Surety., sec. 378; Moss v. Pettingill, 3 Minn., 217.

3. A. M. Hill, the sheriff of Cooke County, being the brother-in-law of one of the defendants in the execution in favor of Thomas Trammell & Co., issued from the District Court of Wise County, was disqualified for executing the same, and the sale by the said Hill thereunder was therefore void. Erwin v. Bowman, 51 Texas, 518; Blacks. Com., 349; Murf. on Sheriffs, sec. 23; Freem. on Ex., secs. 40, 99a; Callais v. McLeod, 49 Am. Dec., 376; Freem. on Void Judg. Sales, sec. 29.

4. The court erred in not holding that W. E. Cobb & Co., at their execution sale, bought subject to an apparent encumbrance of $43,000 in favor of Gregory, Cooley & Co., and for a merely nominal consideration, and that as against the other creditors of J. W. Wilson, who was insolvent, they could not hold the land freed of the encumbrances. 3 Pome. Eq., sec. 1205; 2 Jones on Mort., sec. 768; 2 Bige. on Fraud, 423; Martin v. Ranlett, 57 Am. Dec., 770.

5. W. E. Cobb & Co., at the execution sale, having paid only $36, which is no consideration for the land, are mere volunteers, and their purchase is void as to the other creditor of their insolvent debtor, J. W. Wilson. Randolph v. Quidnick, 135 U. S., 457; 2 Bige. on Frauds, 500; Bump. on Fraud. Con., 258; Stovall v. Bank, 47 Am. Dec., 85; Bethel v. Sharp, 76 Am. Dec., 790; Bunts v. Cole, 41 Am. Dec., 226.

6. The pretended sale by Smith under the fraudulent deed of trust to secure Gregory, Cooley & Co., pending the injunction restraining the same and the suit to cancel the same, was fraudulent and void as to the other creditors of J. W. Wilson; and Cobb and Lang being concerned in said sale, and having aided to cover up and conceal the property of said Wilson, and having elected to abandon their suit and take under the fraudulent deed of trust, thereby abandoned the. sheriff's sale, and the court erred in not so holding. Herm. on Estop., secs. 163, 436; Field v. Langsdorf, 43 Mo., 32; Caldwell v. Brewer, 75 Ill., 516; Hardin v. Joy, 21 Kans., 318.

*J. H. Cobb* and *Potter, Potter & Mathis,* for appellees.— 1. If the abstract of the judgment of the First National Bank of Austin was recorded in such a manner as to create a lien on the land in controversy, the same could not avail appellants, because, before the record of such abstract, the execution on the Thos. Trammell & Co. judgment had been levied on the land. Lindsay v. Jaffray, 55 Texas, 626; Brockenborough v. Melton, 55 Texas, 493.

2. The issuing of more than one execution at the same time on a judgment does not render the execution void, and is but an irregularity that can not avail the appellants in a collateral attack upon the execution sale, because the suit is brought too late, and not in the proper court. Freem. on Ex., secs. 49, 50; Pengton v. Yell, 52 Am. Dec., 262; Mace v. Dulton, 52 Am. Dec., 510; State v. Page, 40 Am. Dec., 608; Hudson v. Dangerfield, 20 Am. Dec., 297; 2 Freem. on Ex., secs. 306, 307; Miller v. Keortge, 70 Texas, 167.

3. The alleged levies made by the other executions did not operate as payment of the judgment, or as a discharge of Wilson. Freem. on Ex., sec. 269; Garner v. Cutler, 28 Texas, 176; Cornelius v. Burford, 28 Texas, 202; Cravens v. Wilson, 48 Texas, 337; Brandt on Surety., secs. 378, 380.

4. All the testimony shows that the price bid at the execution sale by Cobb & Co. for the land was a fair price under the condition of the title, and for which condition appellees were not to blame. Blum v. Rogers, 71 Texas, 676; Miller v. Keortge, 70 Texas, 165.

STEPHENS, ASSOCIATE JUSTICE.—There is involved in this suit the title to about 3000 acres of valuable land situated in Cooke County. One J. W. Wilson is the common source of title. The land was first levied on and sold under execution against the Stone Cattle and Pasture Company, J. W. Wilson, and others, as the property of J. W. Wilson, under a judgment in favor of Thomas Trammell & Co. Appellees, W. E. Cobb and J. J. Lang, claim under this judgment, levy, and sale. Appellants claim under a judgment lien and a subsequent levy and sale thereunder, against substantially the same parties. This judgment was obtained by appellant the First National Bank of Austin, and the abstract thereof was recorded in Cooke County subsequent to the levy and prior to the sale under which appellees claim. There was a trial without a jury, and as the court's conclusions of fact contained in the record cover all the material issues of fact and are sustained by the statement of facts, we here adopt them as our conclusions of fact in this case.

Appellant's first assignment of error presents the question, whether the record of the abstract of the judgment in favor of the First National Bank of Austin is sufficient to create a lien, on account of the manner in which the name of said bank was indexed. The name seems to have been written in the alphabetical index kept by the clerk for that purpose under the name "Plaintiff," and under the letter "B," as follows: "Bank, First National, of Austin." The court below held this to be insufficient. He, however, found as a fact that the judgment had been indexed.

The statute makes the indexing of the names of both plaintiffs and defendants essential to the creation of a lien, but does not prescribe exactly

how this shall be done. Mr. Black, in his work on Judgments, section 406, lays it down as the purport of decisions, that "a sufficient degree of accuracy is attained in such indexing if an intending purchaser (for example), exercising a reasonable degree of care and a reasonable degree of intelligence in making a search, could not fail to be apprised of the existence and character of the judgment." We are, however, cited to no case directly in point, and have been unable to find any; and as the question is one of importance, and not necessary, as we think, to the disposition of this appeal, we leave it undecided.

The second, third, and ninth assignments of error, submitted together by appellant, attack the levy and sale under which appellees deraign title, because of the issuance at the same time of executions to Wise, Cooke, Wichita, Archer, Baylor, and Wilbarger Counties, and because of certain levies made under these executions subsequent to the levy in question. We are of opinion that the matters complained of by these assignments were but irregularities, which did not render the levy and sale void; and that inasmuch as the court found that they did not tend to depreciate the price of the property sold, they would not constitute sufficient ground to set aside the sale, especially after the lapse of more than four years. Freem. on Ex., secs. 49, 50; Railway v. Morris, 67 Texas, 692; Earle v. Thomas, 14 Texas, 583.

We also conclude that the proposition asserted in said assignments, that the judgment must be held satisfied because of these subsequent levies, under the facts disclosed by the record and found by the court below, can not be sustained.

We are of opinion that the inconclusive circumstances relied upon to show a satisfaction of this judgment were not sufficient to require a finding that it had been satisfied in full at the time of the sale, and hence that the sale was void. Freem. on Ex., sec. 269.

The twelfth assignment insists that the purchase by appellees at a trustee's sale under the deed of trust in favor of Gregory, Cooley & Co. (which deed of trust was held to be void), amounted to an abandonment of their title under the execution sale. Our conclusion upon this assignment is, that the purchase at the trustee's sale, being in compromise of the litigation about the validity of the deed of trust, was intended to strengthen and did not have the effect to destroy the title already acquired.

The fifth assignment of error pronounces the execution sale void because the sheriff who executed the writ was brother-in-law to one of the defendants therein, to-wit, D. H. Phillips. In the absence of a statute declaring such a disqualification, we conclude that the act of the sheriff was not as if done without any official authority and hence void. For a review of the authorities on this question, see Barker v. Renick, 43 New Hampshire, 235; see also Mechem on Public Officers, sections 518, 524.

It follows from these conclusions, that appellants did not acquire by

their purchase under a subsequent execution sale under a judgment lien which, if valid, was subsequent to the execution lien under which appellees claim, a superior title to that of appellees; and therefore that appellants can not recover the property in controversy. They contend, however, if not entitled to this relief, that appellees should be decreed to hold the land in trust for appellant bank, and that equitable relief be granted. This prayer is not accompanied by any offer to do equity; and we are of opinion, that in view of the delay in bringing this suit and of the changed condition of the parties interested, under the facts found by the learned judge, the vacation of the execution sale under which appellees deraign title would be manifestly inequitable, and that no error was committed in refusing equitable relief. Freem. on Ex., sec. 307a.

This disposes of all the other assignments of error.

The judgment will therefore be in all things affirmed.

*Affirmed.*

Delivered January 24, 1893.

A motion for rehearing was overruled.