CLARENDON LAND INVESTMENT AGENCY COMPANY V. McCLELLAND BROS.

No. 47.

### 1. Cattle May Run at Large—Duty of Owner of Land.

Neither the courts nor the Legislature of this State have ever recognized the rule of the common law which requires every man to restrain his cattle, either by tethering or by enclosure. If cattle of one person wander upon the unenclosed lands of another, or upon his lands imperfectly enclosed, they are not trespassers, and the owner is not liable for any damage that they may inflict. It follows, that one who desires to secure his lands against the encroachments of livestock running at large, either upon the open range or in adjoining fields or pastures, must throw around it an enclosure sufficient to prevent the entry of all ordinary animals of the class intended to be excluded. A charge in conflict with this rule held reversible error............ ... 185

### 2. Kind of Fence.

It may be admitted, that if the owner's enclosure be sufficient to exclude all cattle of an ordinary disposition, he would have the right to recover for the trespass of such as are peculiarly vicious and prone to break fences....................................................... 186

### 3. Right of Owners of Livestock.

It is the right of every owner of domestic animals in this State, not known to be diseased, vicious, or breachy, to allow them to run at large, and this without reference to the size or class of such animals kept by others in the same neighborhood; e. g., a stock owner may turn his calves and yearlings out, although adjoining a pasture built to secure older and larger kinds...................................... 186

### 4. Statutes Defining Lawful Fences, etc.

Title 43; title 93, chapter 5, and act amendatory, March 26, 1887, apply to lands in cultivation, and not to pasture lands...................... 186

### 5. Diseased Cattle.

An owner of diseased cattle would be liable in damages caused by placing them in his pasture adjoining another into which it was probable the diseased cattle might intrude.. ...   ............................... 187

ON MOTION FOR REHEARING.

### 6. Conclusiveness of the Findings of Fact by Courts of Civil Appeals.

It is prescribed that "the judgments of the Courts of Civil Appeals shall be conclusive upon the facts of a case." By this is meant that the decision of that tribunal upon questions of fact—that is to say, questions upon which there may be a conflict in the evidence—shall be final, and not the subject of review in this court ............................. 187

### 7. Same.

In accordance with the statute, Acts of 1892, page 22, this court adopted rule 5 (of Rules, etc.), directing that the transcript shall be transmitted to this court in every case in which a writ of error shall have been granted. This is to enable this court to decide all issues presented for its determination in the light of the pleadings, and of every fact established by undisputed evidence, or the conclusions of the Court of Civil Appeals upon the conflicting evidence ................ 188

**8. Same.**

Where the testimony in the record is undisputed, it will be considered by this court, although it conflict with a finding by the Court of Civil Appeals.  See example .......................................... 188

**9. Rules.**

Rules 24, 25, and 26, on assignments of error, discussed and construed.. 190

**10. Assignments of Error.**

When an assignment of error is sufficiently specific to enable the court to see that a particular ruling is complained of, it should be held good. The reasons by which allegations of error are sustained find their proper place in the propositions, statements, and authorities required to be set forth in the brief, under and in support of the respective assignments ..................................................... 191

**11. Same.**

An assignment of error, that "the court erred in the fifth paragraph of his charge to the jury, which is as follows" (setting it out), is sufficient, without allegation wherein is the error complained of..... 189, 192

**12. Same.**

An assignment, that "the court erred in overruling the defendant's general demurrer to plaintiffs' petition," should be held good, and should be considered on appeal........................................... 192

**13. Cause of Action.**

Allegation that plaintiffs' land was securely fenced and that defendant permitted its cattle to break through their enclosure, states cause of action on general demurrer....................................... 192

Error to Court of Civil Appeals for Second District, in an appeal from Donley County.

*Matlock & Peacock* and *W. R. Butler*, for plaintiff in error.— 1. The court erred in overruling the defendant's general demurrer to plaintiffs' original petition.  The allegation of the scienter is not only a material allegation, but is a necessary allegation, and must be proved.  Gibbs v. Coykendall, 39 Hun, 140; Cook v. Waring, H. & C., 2 Exch., 331–338; Fisher v. Clark, 41 Barb., 329; Week's Dam. Ab. Inj., sec. 118, note 1; Hale v. Blanford, 45 Ill., 9; Fultz v. Wyckoff, 25 Ind., 324; Kerschacke v. Ludwig, 25 Wis., 430; Wormley v. Gregg, 56 Ill., 251; Lyke v. Van Leuven, 4 Denio, 127; 17 N. Y., 520; Tift v. Tift, 17 N. Y., 538; Sedg. on Meas. of Dam., 722, 723; 1 Thomp. on Neg., 186, 189, 205, 206; Cool. on Torts, 343, and note 2, 344, and note 102; Spring Co. v. Edgar, 99 U. S., 645; Moss v. Partridge, 9 Ill. App., 490; Twigg v. Ryland, 24 Am. Law Reg., 191; Whit. Smith on Neg., 101, 102.

2.  Simply turning one's cattle, having an infectious disease, into his own pasture, adjoining the pasture of another, occupied by cattle, is not unlawful, nor such an act or wrong or negligence as will give to the owner of the adjoining premises a cause of action for damages sustained in consequence of the disease being communicated to his cattle.  Fisher v. Clark, 41 Barb., 329; Mills v. Railway, 41 N. Y., 619; Walker v. Her-

ron, 22 Texas, 55; Scott v. Groves, 46 Am. Rep., 814; Gibbs v. Coykendall, 39 Hun, 141.

3. Plaintiffs can not recover in this case, even if defendant had known when it placed the cattle in its pasture in Donley County that the same were liable to communicate disease to plaintiffs' cattle, unless the evidence shows that defendant was guilty of culpable negligence and willfulness in the care and custody, management, and handling of their cattle, and as a result of such culpable negligence and willfulness plaintiffs' cattle contracted the disease and died therefrom. And it must further appear that the plaintiffs have not been guilty of any culpable negligence or willfulness or contributory negligence in handling, managing, and caring for their own cattle. Walker v. Herron, 22 Texas, 60; Wolf v. Iron Works Co., 10 Cal., 544; Shearm. & Redf. on Neg., secs. 5, 12; Hoffman v. Water Co., 10 Cal., 413; 1 Hill. on Torts, 67; Sedg. on Dam., 7 ed., 362.

4. If it appears from the evidence that plaintiffs were guilty of culpable negligence, or that their negligence contributed to the injury they suffered, whatever may be the degree of their negligence, notwithstanding the defendant may have been guilty of negligence, yet plaintiffs can not recover. Walker v. Herron, 22 Texas, 59, 60; Telfer v. Railway, 3 Am. Law Reg., N. S., 665; Wild v. Feairrie, 2 Am. Law Reg., N. S., 242; Zoebisch v. Tarbell, 5 Am. Law Reg., N. S., 572; Waters v. Wing, 8 Am. Law Reg., N. S., 738; Canal Co. v. Bentley, 10 Am. Law Reg., N. S., 746; Jacob v. Duke, 3 Am. Law Reg., O. S., 443; O'Brien v. Railway, 6 Am. Law Reg., O. S., 361; Freer v. Cameron, 55 Am. Dec., 670, and note; 2 Sedg. on Dam., 347–349, note 1, 349, 350, note A, and 358; 1 Sedg. on Dam., 164, 165, note A; Bush v. Brainard, 1 Cow., 78.

Counsel cited additional authorities in petition for writ of error: Salinas v. Wright, 11 Texas, 577; Lipscomb v. Bryan, 22 Texas, 609; Sneed v. Moodie, 24 Texas, 160; Whitlock v. Castro, 22 Texas, 111; Ramsay v. McCauley, 2 Texas, 189; Morrison v. Ins. Co., 69 Texas, 359; Railway v. Hennessy, 75 Texas, 157; Ford v. Taggart, 4 Texas, 492; Champion v. Vincent, 20 Texas, 812; Hilliard v. Railway, 37 Iowa, 445; Syford v. Shryford, 61 Iowa, 155; Clark v. Phelps, 4 Cow., 190; Johnson v. Presby, 2 N. H., 56.

*Browning & Madden,* for defendants in error, in original brief, cited: Davis v. Davis, 70 Texas, 123; Chunot v. Larson, 43 Wis., 536; Zacharie v. Bryan, 2 Texas, 274; Prewett v. Farris, 5 Texas, 370; Warner v. Bailey, 7 Texas, 517; Deys v. Stewart, 4 Denio, 101; Hamburg v. Wood, 66 Texas, 168; Walker v. Herron, 22 Texas, 55; Gallaher v. Bowie, 66 Texas, 70; Hays v. Hays, 66 Texas, 606; Shumard v. Johnson, 66 Texas, 70; Randall v. Carlisle, 59 Texas, 69; Powell v. Haley, 28 Texas, 53; Briscoe v. Bronough, 1 Texas, 326; Chevallier v. Denson, 8 Texas, 439; Alley v. Booth, 16 Texas, 94; Ward v. Bledsoe, 32 Texas,

251; 1 Thomp. on Neg., 206, 209; 6 Wait's Act. and Def., 72; 1 Suth. on Dam., 24.

And in supplemental brief contended: 1. That said petition is good on general demurrer. Dist. Ct. Rule 17, 47 Texas, 619; Frosh v. Sweet, 2 Texas, 485; Williams v. Warnell, 28 Texas, 610. The plaintiffs' petition alleged that their land was "securely fenced and enclosed," and that averment is good against a general exception.

2. Under the second proposition submitted in the petition in error, it is contended, that the opinion of the Court of Civil Appeals does not correctly declare the law of this case, and in support of their position they cite a number of authorities which were never referred to in their brief before the Court of Civil Appeals.

It will be seen upon examination that these cases are not applicable to the case at bar.

Cole v. Tucker, 6 Texas, 270, was an action in trespass against the defendant for killing a mule belonging to plaintiff, while it was depredating upon defendant's crop. The defendant, in his answer, admitted that he had an insufficient fence, but justified himself by a tender of money for the damages done, and thus tried to evade the plaintiff's right to vindictive or exemplary damages. The decision turned upon the point whether the defendant was liable for exemplary damages.

Ford v. Taggart, 4 Texas, 492, is a similar case, and the court says that the defendant has no right to destroy plaintiff's property, even if his fence was lawful.

Champion v. Vincent, 20 Texas, 811, was an action against defendant for shooting three of plaintiff's hogs while they were rooting up potatoes in defendant's potato patch.

All three of these cases turned upon the question of the right in the plaintiffs to recover exemplary damages for the destruction of their stock by the willful acts of defendant. Therefore we contend that they are not applicable to this case.

Webster defines a "gardener" to be "one who makes and tends a garden; horticulturist." He defines a "farmer" to be "one who farms; as one who hires and cultivates a farm; a cultivator of leased ground; a tenant; an agriculturist; a husbandman." He also defines a "planter" to be "one who plants, sets, introduces, or establishes; as a planter of maize; a planter of vines; one who owns a plantation."

From these definitions, we can not see how article 2431 of the Revised Statutes can be construed into the meaning insisted upon by counsel for plaintiff in error. And further, the said article provides for the fence to be "about his cleared land in cultivation." Why not have said "about his land" if the intention was that contended for by opposing counsel?

Take into further consideration the time when this act was originally

passed (1840), and the meaning of the law is clear. This court held in Davis v. Davis, 70 Texas, 123, that "Every owner of land in this State is entitled to its exclusive enjoyment. If he take no steps to guard against the intrusions of his neighbor's cattle, he can not complain if they roam over and graze upon it. If he enclose it, his enclosure must be respected, although it may not be a statutory fence." The opinion further says: "The object of the statute was to afford an easy remedy for trespasses by livestock to such land owners as complied with its provisions, and was not to throw open to the use of the public the lands of all proprietors who did not observe the statutory requirements in making or maintaining these enclosures. We are not prepared to say that the Legislature had the power to make the private lands in the State, when not enclosed in a particular manner, a common grazing ground, if it so desired." 70 Texas, 125.

Again, this court, in Worthington v. Wade, 82 Texas, 26, said: "It seems to be insisted that because the fence is not such as is prescribed by the Act of April 18, 1879, it was unlawful to construct it. But the object of that act was merely to prescribe such a fence as would enable land owners to enforce certain remedies against the owners of trespassing animals, and not to prohibit any other kind of fence." 82 Texas, 28, 29. And the court in said case again confirms the doctrine laid down in Davis v. Davis, 70 Texas, 123.

There is nothing in chapter 4, title 93, of Sayles' Civil Statutes, or in title 43 of said statutes, that conflicts in any manner with the principle enunciated by the two last decisions above cited, nor with those cited by plaintiff in error. If the plaintiff in error is bound to have some statutory rule to govern a recovery in this case, it would seem that article 4609 ought to satisfy it.

The Court of Appeals, in the case of Wool Growing Company v. Bogel, 3 Willson's Civil Cases, section 273, held that an action would lie against defendant for entering upon the plaintiff's unenclosed lands with 5000 sheep, and herding same upon said land, over the protests of the plaintiff.

The criminal laws of this State also indicate clearly the intention of the law making power to protect a land owner in his possessions, whenever he evinces a desire to maintain exclusive control over his land by placing a fence around it. That policy is shown particularly in Penal Code, articles 665, 675a, 684, 684a, and 631a. Also, Laws 23rd Leg., ch. 67, pp. 87, 88.

The policy of this State in reference to this question seems to be so clearly settled that the Court of Civil Appeals very properly made use of the following language in rendering the opinion in this case when before that court: "It must be considered as settled in this State, that the failure of the owner of land to construct around it the exact kind of fence prescribed by the statute does not throw it open to whomsoever

sees proper to drive his cattle thereon; these statutes being regarded as intended to prescribe an easy remedy for those who so enclose their land, leaving those who do not to settle their rights independent of the statute.''

To change this settled policy now would confuse and embarrass almost every settler in the entire west and northwest portion of the State, constituting more than one-half of the area of Texas. It is almost impossible to find, in the entire Panhandle country, such a fence as the counsel for plaintiff in error insists that the defendants in error should have had around their land to entitle them to recover their damages so clearly and indisputably shown in this case.

GAINES, ASSOCIATE JUSTICE.—This suit was brought in the District Court of Donley County, by the defendants in error, to recover of plaintiff in error damages for an alleged trespass of the latter's cattle upon the pasture of the former. It was claimed in the petition that the plaintiffs' cattle had died by reason of a disease communicated to them by those of the defendant. There was a judgment for the plaintiffs, which, upon appeal by the defendant, was affirmed in the Court of Civil Appeals.

It was shown upon the trial, that the plaintiffs were the owners of a pasture embracing 2000 acres, which was enclosed by a wire fence, and upon which they held about 100 head of cattle. This pasture was entirely surrounded by a much larger one, which was owned by the defendant corporation, and which was also enclosed by a fence of the same general character. The fence of plaintiffs, as they testified, was constructed of '' posts about 30 feet apart, with four barbed wires, and three or four stays between each post.'' In 1889 the defendant company placed in its pasture a large number of East Texas cattle, which were less in size than the cattle of the Panhandle section. Some of these cattle passed through the plaintiffs' fence and into their pasture, and there was evidence sufficient to justify a finding that they communicated a disease to some of plaintiffs' cattle, from which they died. The fence appears to have been passed through by the young cattle, presumably the calves and yearlings.

One of the plaintiffs testified that '' they (meaning the cattle) would crawl through the fence.'' The other also testified as follows: '' They were small, and just walked through our fence.''

The court charged the jury as follows: '' Every entry of one's own cattle upon the lands or premises of another is a trespass, and the owner of such cattle will be liable for any damages sustained by the owner of such premises, if any, provided such lands or premises were at the time of such entry enclosed by a fence sufficient to exclude therefrom such cattle or animals as were accustomed to be used in the country or the range around and about such enclosed premises, and provided further

that such trespass is effected by a forcible entry through such fence or enclosure."

This charge was assigned as error upon the appeal to the Court of Civil Appeals, and the assignment is insisted upon in this court.

Neither the courts nor the Legislature of this State have ever recognized the rule of the common law of England which requires every man to restrain his cattle either by tethering or by enclosure. Davis v. Davis, 70 Texas, 123. Hence if the cattle of one person wander upon the unenclosed lands of another, or upon his lands imperfectly enclosed, they are not trespassers, and the owner is not liable for any damage that they may inflict. It follows that one who desires to secure his lands against the encroachments of livestock running at large, either upon the open range or in an adjoining field or pasture, must throw around it an enclosure sufficient to prevent the entry of all ordinary animals of the class intended to be excluded. If he does not, the owner of animals that may encroach upon it will not be held liable for any damage that may result from such encroachment. This is the necessary result of the right of the owner of domestic animals to permit them to run at large, as recognized by the laws of this State. Since he does not owe the duty of confining his cattle, he is guilty of no negligence, and he does no wrong by allowing them to go unconfined, and is not responsible for their acts if, by reason of an insecure fence, they inflict damages upon the lands of a neighbor. In other words, their encroachment upon another's lands is not a trespass. If, however, he drives his cattle upon the enclosed land of another, however imperfectly enclosed, he is guilty of a trespass, for which he is liable to answer in damages. Davis v. Davis, supra.

Tested by the rule we have announced, the charge under consideration can not be sustained. Abstractly considered, it admits of a holding, that if only sheep " were accustomed to be used in the country or in the range around and about the enclosed premises," and the owner of the land had a fence sufficient to exclude such animals, one who should bring in neat cattle, and leave them unconfined upon adjacent lands, would be held to respond in damages for any loss that might ensue by reason of their encroaching upon the enclosed premises. It is clear that such is not the law. It is but just, however, to the learned judge who tried the case to say, that it is apparent from the entire charge, in the light of the testimony, that he did not intend to lay down so broad a doctrine. He referred solely to neat cattle. But the possible construction we have suggested serves to illustrate what we conceive to be an error in the instruction, when applied, as doubtless intended, to the latter class of animals only.

We do not hold that for no breach of his fence and invasion of his pasture by domestic animals could a land owner recover under our laws. It may be admitted, that if his enclosure be sufficient to exclude all cat-

tle of an ordinary disposition, he would have the right to recover for the trespass of such as were peculiarly vicious and prone to break fences. The owner of a dog may, as a general rule, permit him with impunity to run at large, but if he knows him to be vicious and does not restrain him, he is liable for any injury he may inflict upon person or property; and it would seem that the same principle should apply to the owner of any domestic animal known to him as being accustomed to break through an ordinarily good and sufficient fence.

But upon what principle are we to draw a distinction between small cattle and large? If the fact that all the cattle in the neighborhood of his pasture were of large breeds when his fence was constructed would relieve the owner of the necessity of making his fence sufficiently close to keep out small cattle that might be brought into the country, why should he be not relieved against the necessity of fencing against hogs, provided there were no hogs within reach when he made his enclosure? The owner of the little "dogies" (as the witnesses call them), such as crawled or walked so freely under the wires of plaintiffs' fence, had precisely the same right to permit them to go at large as his neighbors had who owned Herefords or shorthorns; and it could make no difference who came first with his cattle to the neighborhood. It is equally unimportant whether others in the same section or neighborhood kept the same kind of cattle or not.

It is the right of every owner of domestic animals in this State, not known to be diseased, vicious, or "breachy," to allow them to run at large, and this without reference to the size or class of such animals kept by others in the same neighborhood. For these reasons we think there was error in the charge complained of, for which the judgment must be reversed.

We are of the opinion that the Act of March 26, 1879 (2 Sayles' Civil Statutes, article 4609a), applies only to counties and subdivisions of counties in which the provisions of chapter 4 of title 93 of the Revised Statutes have been put in force by an election. So also title 43, in relation to fences, applies only to lands in cultivation, and not to pasture lands. They have no bearing upon the case, except in so far as they evince a recognition by the Legislature of the general rule, that owners of domestic animals have the right in this State to permit them to run at large.

In order to obviate any misconception in the scope of this opinion, we call attention to the radical distinction between this case and that of Davis v. Davis, supra. In that case the defendant drove his cattle upon the plaintiff's enclosed land. That made him a willful trespasser. In this the defendant corporation merely put its cattle upon its own pasture, and they passed the plaintiffs' fence of their own volition.

If the agents of the defendant corporation knew that their calves could pass through the plaintiffs' enclosure, and that they were likely to com-

municate disease to the latter's cattle, it was negligence on its part not to confine them, and for the consequences of that negligence it would be liable.

The judgments of the District Court and of the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

GAINES, ASSOCIATE JUSTICE.—In this motion for a rehearing the appellees do not ask a reconsideration of our ruling upon the principles of law which govern the merits of the controversy; but they do insist that the record, as it came to us, did not, under the Constitution and laws of the State and the rules of practice of this court, present for our determination the questions determined in the former opinion.

It is contended, in the first place, that because our jurisdiction is limited to questions of law, and because the judgments of the Courts of Civil Appeals are made conclusive upon the facts, we are not at liberty to look beyond the conclusions of fact filed in such a court, in determining a case brought before us upon a writ of error. The statutes provide, that in a cause in which a writ of error lies to the Supreme Court, the Court of Civil Appeals shall file its conclusions of fact and law, and it was doubtless contemplated that these conclusions should embody a full statement of all the facts established upon the trial of the case. Act of April 13, 1892, sec. 31, Laws of 1892, p. 31.

It is also true that the fifth section of the same act provides, among other things, that "the judgment of the Court of Civil Appeals shall be conclusive upon the facts of a case," but the meaning of the provision is clear. To recite the uncontroverted facts of a case demands no act of judgment, in the sense in which that term is used in the statute. What is meant is, that the decision of that tribunal upon questions of fact—that is to say, questions upon which there may be a conflict in the evidence—shall be final, and not the subject of review in this court.

Article 1033 of the Revised Statutes, as amended by the Act of April 13, 1892, provides, that the Supreme Court, upon the hearing of a case brought up by a writ of error, "may require at any time the original transcript to be sent up" (Laws 1892, page 22); and in pursuance of that authority, this court has adopted a rule which directs that the transcript shall be transmitted to this court in every case in which a writ of error shall have been granted. 84 Texas, 696, rule 5. If it was intended that the Supreme Court should decide the case upon the conclusions of law and fact filed in the Court of Civil Appeals, the power conferred by the provision in the statute last cited is nugatory. We think the purpose was

to empower this court not to revise the decision of the court of appeals upon any disputed question of fact, but to enable it to decide all issues presented for the determination of this court, in the light of the pleadings and of every fact established either by the undisputed evidence or the conclusions of the appellate court, upon the conflicting evidence.

It is not to be presumed that a Court of Civil Appeals will intentionally avoid in its statement of the case any fact material to its determination. But in the view they take of the law, a fact may appear to them immaterial, which in the opinion of this court may have an important bearing upon the determination of the cause. If there should be a conflict in the testimony as to the question whether a certain thing be black or white, and the Court of Civil Appeals finds that it was white, this court is bound by that finding. But if the undisputed evidence show that it was black, and that court, not being impressed with the materiality of the fact, should inadvertantly state that it was white, it would be an unreasonable rule that would withhold from this court the power to correct the error and decide according to the evidence, in the event it should deem the fact material to a proper disposition of the cause. This is a strong illustration, and one not likely to occur; but errors less palpable, but equally as prejudicial, may occur, and this court should not be bound by them.

In this case the Court of Civil Appeals, in their conclusions of fact, found that the appellant's cattle " broke through appellees' fence;" but as stated in the former opinion, one of the appellees testified in the trial court that the cattle " would crawl through the fence," and the other that " they were small, and just walked through the fence into our pasture." It is clear that there was no actual breaking, and viewed in the light of the undisputed testimony, it is also clear that the court did not intend in its conclusions to convey that idea. The case itself affords a striking illustration of the injustice of the rule for which counsel contend.

There is nothing in the opinion in the case of Meade v. Land Company, 85 Texas, 815, inconsistent with the views here expressed.

In this same connection, it is complained that even if we had the power to look to the testimony, we were in error in concluding that the plaintiff in error's cattle were less in size than other cattle in the neighborhood. But if this deduction be not warranted by the testimony, it is unimportant. They were evidently not fence-breaking cattle. We may say, however, that we do not clearly see how the cattle in question " just walked through " a wire fence sufficient to keep out " the ordinary cattle of the country," unless it was by reason of the fact that they were extraordinarily small.

It is contended, in the second place, that the error for which we have held that the judgment should be reversed was not properly assigned in the

Court of Civil Appeals, and that therefore we were in error in considering the assignment here. That assignment reads as follows:

"The court erred in the fifth paragraph of his charge to the jury, which is as follows: 'Every entry of one's own cattle upon the lands or premises of another is a trespass, and the owner of such cattle will be liable for any damages sustained by the owner of such premises, if any, provided such lands or premises were at the time of such entry enclosed by a fence sufficient to exclude therefrom such cattle or animals as were accustomed to be used in the country or the range around and about such enclosed premises, and provided further, that such trespass is effected by a forcible entry through such fence or enclosure.'"

It is insisted that the assignment is too general, under the statute and rules and practice of this court. The same question has been presented in another case at this term, and it seems to be one upon which the bar are somewhat at sea. It is important that it should be settled; and with a view to its definite determination, so far as may be practicable, we have examined the decisions of this court from its earliest day. They are very numerous, however, and we can therefore hardly claim that none have escaped our attention.

The ground upon which the assignment is asserted to be insufficient seems to be, that in addition to pointing out the particular ruling which is claimed to be erroneous, it should have given the reason upon which that claim is based. We will refer to some of the cases, in order to illustrate the distinction between those in which assignments apparently general have been held good, and those in which such assignments have been held bad.

In Earle v. Thomas, 14 Texas, 583, an assignment that "the court erred in refusing the charge asked by the defendant" was held good.

In Harper v. Stroud, 41 Texas, 367, it was held, that an assignment that "the court erred in approving the claim"— it being a suit to establish a claim against an estate—was sufficiently specific.

In Norwood v. Cobb, 20 Texas, 588, it was decided, that when the bill of exceptions showed the objections to the evidence, it was not necessary to repeat the objections in the assignment, but that it was sufficient to assign error generally in the admission of such evidence.

In Hillebrant v. Brewer, 5 Texas, 566, that "the court erred in overruling defendant's exceptions to the petition" was held a good assignment. This, like some other of the very early cases, recognizes too liberal a rule.

On the other hand, in Allen v. Stephanes, 18 Texas, 670, Judge Hemphill says: "The second assignment, that the court erred in its charge to the jury, specifies no particular error as a ground of complaint. It is objectionable on this ground, the charge being full and embracing several legal propositions."

In Howard v. Colquhoun, 28 Texas, 134, an assignment that the court erred in refusing defendant's special instructions, there being thirteen of them, was disregarded as being too general.

These decisions are sufficient to indicate the rules of practice recognized by the court at the time the present rules upon the subject of assignments were first adopted; and we see nothing in the new rules, so far as this matter is concerned, to indicate that it was the intention to do more than to declare in unmistakable language and place in established form the rules of practice already announced in the decisions of the court. The new rules were first formulated and adopted December 1, 1877 (47 Texas, 597), and are embodied in the same language in the rules for the government of the Courts of Civil Appeals, adopted by this court at its last term. 84 Texas, 700. They are now numbered and read as follows:

"24. The assignment of errors must distinctly specify the grounds of error relied on; and a ground of error not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental as that the court would act upon it without an assignment of errors, as mentioned in rule 23.

"25. To be a distinct specification of error, it must point out that part of the proceedings contained in the record in which the error is complained of, in a particular manner, so as to identify it, whether it be the rulings of the court upon a motion, or upon a particular part of the pleadings, or upon the admission or rejection of evidence, or upon any other matter relating to the cause or its trial, or the portion of the charge given or refused, or the fact or facts in issue which the evidence was incompetent or insufficient to prove, the insufficiency of the verdict or finding of the jury, if special, and the particular matter in which the judgment is erroneous or illegal, with such reasonable certainty as may be practicable in a succinct and clear statement, considering the matter referred to.

"26. Assignments of error which are expressed only in such general terms, as that the court erred in its rulings upon the pleadings, when there are more than one, or in its charge, when there are a number of charges, or the verdict is contrary to law or to charge of the court, and the like, without referring to and identifying the proceeding, will not be regarded by the court as a compliance with the statute requiring the grounds to be distinctly specified, and will be considered as a waiver of errors, the same as if no assignment of errors had been attempted to be filed."

The language in rule 24, that "the assignment of error must distinctly specify the grounds of error relied on," gives countenance to the contention that the assignment should not only point out with distinctness the particular ruling complained of, but that it should also state the reason why that ruling is claimed to be erroneous. The ground of error may mean the proposition by which the contention that there is error in the

action of the court is intended to be supported.  But we are clearly of opinion that the words were not used in that sense.  The evident purpose of rules 25 and 26 is to define and illustrate what is meant by rule 24. For example, when rule 25 says that the specification of error must point out "the portion of the charge given or refused," it implies that if such portion be distinctly specified it shall be sufficient.  It does not say that the assignment must state the reason by which it is sought to be supported.  But to make the meaning more definite rule 26 specifies that certain assignments shall be deemed bad by reason of their generality; and among the examples given is that of an assignment which complains that the court erred "in its charge, when there are a number of charges." This also implies that an assignment which complains of a component part of a general charge, or of the giving or refusal of a special charge, shall be deemed sufficient.  Thus rules 25 and 26 explain rule 24, and the two taken together, by inclusion and by exclusion, clearly define its meaning.

We have found one case in which an opinion contrary to our view is expressed.  In Pearson v. Flanagan, 52 Texas, 278, the court say: "Each error assigned should contain a distinct ground for the reversal of the judgment, with a specification of the reason why it should be reversed, and should be copied or substantially stated in the briefs." But in that case the question before us was not presented.  The assignments which were held bad were, that "the court erred in refusing the defendant a new trial, for the reason given in said motion," and that "the court erred in not giving the several special charges to the jury asked by the defendant."  The assignments specified no particular error, and were therefore insufficient.  They did not call for the determination of the question whether the reasons for alleging error should be stated or not.

In Earle v. Thomas, supra, the question of the particularity requisite in an assignment was discussed, and, as we think, the true rule laid down. The assignment which was objected to in that case was, that "the court erred in refusing the charge asked by the defendant."  The court say: "It is objected on behalf of the appellee, that the assignment of error in this particular is too general.  It is, however, sufficiently specific in respect to the charge refused, and that, we think, sufficiently indicates in what respect the charge given was objected to as erroneous.  It would have been better if the assignment in reference to the charge given had been more specific.  *  *  *  What shall be a sufficiently special assignment of error is not susceptible of precise definition.  It should be such as to draw the mind to the apprehension of the particular error relied on. But what shall be sufficient for this process still remains to be determined upon the particular circumstances of each case."

It is to be borne in mind, that the statute and rules which require errors to be assigned were intended primarily for the relief of the appellate

courts, and to secure a prompt dispatch of the business that should be brought before them. · They should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions. It is certain that it was never intended to hedge either the Court of Civil Appeal or the Supreme Court around with technical and arbitrary requirements, so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts.

Where an assignment of error is sufficiently specific to enable the court to see that a particular ruling is complained of, it should be held good, although it should fail to state the reason why such ruling is claimed to be erroneous. An assignment may be brief and yet specific, and brevity in such a case is commendable and accords with good practice. The reasons by which allegations of error are sought to be sustained find their proper place in the propositions, statements, and authorities required to be set forth in the brief, under and in support of the respective assignments.

We conclude that the assignment is question is sufficient.

We are also of the opinion that " the court erred in overruling the defendant's general demurrer to plaintiffs' original petition" should be held good; though we are not prepared to say that the demurrer should have been sustained. The petition alleges, that the plaintiffs' land was securely fenced and enclosed, and that the defendant permitted its cattle to break through their enclosure. Under the rule every reasonable intendment must be indulged in favor of the petition—the demurrer being general. Rule 17, 84 Texas, 711. If the fence was secure and the cattle broke through it, it is a reasonable inference that they were peculiarly vicious in that particular, and were fence-breaking animals.

The motion for a rehearing is overruled.