## REPUBLIC INS. CO. v. DICKSON.
### No. 2785.

Court of Civil Appeals of Texas. Beaumont. Oct. 31, 1935.

Rehearing Denied Nov. 20, 1935.

See, also, (Tex.Civ.App.) 69 S.W.(2d) 599.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

Dallas Ivey, of Center, for appellee.

WALKER, Chief Justice.

In the lower court on an instructed verdict, appellee, J. W. Dickson, was awarded judgment against appellant, Republic Insurance Company, for the amount of $1,200 with interest, being the principal amount of a fire insurance policy. Appellant's defenses were a breach of the following warranties: (a) The insurance on the insured premises was effective "only when occupied by the owner and not otherwise, as a dwelling"; (b) "this entire policy, unless otherwise provided by agreement endorsed herein or added hereto, shall be void * * *· if a building herein described be or become vacant for a period of exceeding ten days." In answer to these defenses appellee pleaded waiver and es-

toppel. The testimony was satisfactorily to the effect that, before the policy was issued, appellee notified appellant that he and his family would, in the near future, move out of the house, and that it would be occupied by a tenant, and further that periods of vacancy would intervene in the occupancy of the house. The testimony was further to the effect that, shortly after the policy was written, the owner moved out and a tenant moved in, and that immediately preceding the fire the house was vacant for more than twenty days. The trial court instructed the verdict on the theory that the knowledge possessed by the agent, before the policy was issued, that the owner would move out and that the house would be vacant, constituted a waiver of these warranties, and that by possessing this knowledge appellant was estopped to insist upon these warranties. On the former appeal we held affirmatively against this legal conclusion of the trial court; we held there was no breach of the warranty of occupancy because, as the record was before us at that time, it was expressly stipulated in the face of the policy that the house could be occupied either by the owner or by a tenant. The testimony on this appeal is clear that the house was insured only while occupied by the owner.

■ On the issue made under the warranty of occupancy, appellant's principal contention is that the court erred in instructing a verdict on the issues of waiver and estoppel; it being appellant's contention, under this proposition, that these issues should have gone to the jury. This assignment is sustained. Though the information given the agent before the policy was issued was not sufficient to raise the issues of waiver and estoppel, yet we find in the record this testimony: After the policy was issued and delivered to appellee, he notified appellant's agent that he was moving out of the house, and that a tenant was moving in. The law of these facts was thus stated by us on the former appeal, 69 S.W.(2d) 599, 602: "In this state it has also been held that, where the company acquires knowledge of facts that operate to forfeit its policy and does not cancel the policy, but retains the unearned premium, it will be held to have waived the condition and will be estopped to assert the forfeiture." Appellee's testimony was all the evidence on this point, and, therefore, under the rule announced by the Commission of Appeals in Mills v. Mills, 228 S.W. 919, these issues should have gone to the jury.

■ On the issue of vacancy on the former appeal, it appeared as a matter of law that the house had been vacant more than ten days before the fire. On this appeal the testimony is uncertain. The only witness on the issue stated facts showing a breach of this warranty, but subsequently modified his testimony to' such an extent that we cannot say, as a matter of law, that the house was vacant for more than ten days. However, appellant had the right to go to the jury on that issue. Had the jury found that issue in its favor, on this trial there was no testimony raising the issues of waiver or estoppel against this defense. Appellant has asked us to reverse the judgment of the lower court and render judgment here in its favor. This proposition is overruled because it reasonably appears to us that, on another trial, testimony will be available to appellee sufficient to send these issues to the jury.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded for a new trial.

### On Rehearing.

■ Appellee assigns error against our order overruling his motion to strike appellant's brief. The points made by appellee against the brief are as follows: (a) No statement was made from the record in support of the propositions. Appellant did not quote the very words from the statement of facts but, line after line, gave a summary of the facts with reference to the statement of facts by page numbers. We have examined carefully the statement made by appellant and it constitutes an accurate summary of the testimony of the witnesses. (b) The second point is that appellant failed to bring forward pertinent assignments of error and propositions. This point is overruled as without merit. The brief was in due form, both as to assignments of error and pertinent propositions. But, if appellee's construction of the brief be conceded, then appellant by its statement, both from the pleadings and from the statement of facts, has clearly shown error in instructing the verdict. In Harlington Land & Water Co. v. Houston Motor Car Co., 209 S.W. 145, an opinion by the Commission of Appeals expressly approved by the Supreme Court, it was held, quoting the fifth syllabus: "Where

defendants sufficiently presented the record in their briefs to make it apparent that it was error to peremptorily instruct a verdict for plaintiff, the matter may be reviewed as fundamentally erroneous." Again, appellant brought its case exactly within the following propositions of law announced by the Commission of Appeals in that case:

"Should we concede that the propositions in appellant's brief are not germane —and they, perhaps, are open to that criticism—yet the brief, taken as a whole, is believed to be sufficient to present the ground of error upon which appellant relies for reversal. Galveston, H. & S. A. R. Co. v. Giles, 126 S. W.[282] 283, cited by the Court of Civil Appeals, does not appear applicable. It is believed that Olivarri v. W. U. Tel. Co. [Tex.Civ.App.] 116 S.W. 392; Clarendon Land Co. v. Mc-Clelland, supra [86 Tex. 179, 23 S.W. 576, 1100, 22 L.R.A. 105], and St. Louis, S. W. R. Co. v. McArthur, 96 Tex. 65, 70 S.W. 317, announce a rule which appeals to fairness:

" 'It is to be borne in mind that the statutes and rules which require errors to be assigned were intended primarily for the relief of the appellate courts, and to secure a prompt dispatch of the business that should be brought before them. They should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions.'

"We are not favorable to the idea of a disregard of the rules by litigants in seeking relief from errors which arise in the trial of cases, and these rules ought to be followed. However, we are loath to deprive a litigant of a substantial right by invoking a technical construction of the rules governing procedure when a reasonable construction will afford opportunity for relief. There may arise cases where strict construction is proper and required; but where the brief, taken as a whole, reasonably presents the error sought to be corrected, we believe it more in accord with justice to give it consideration. In the instant case a fair consideration of the entire brief makes apparent the error of which appellants sought to complain in the Court of Civil Appeals [Harlingen Land & Water Co. v. Houston Motor Co., 160 S.W. 628].

"From what we have said it follows that the Court of Civil Appeals erred in refusing to proceed to a consideration of the case.

"Aside from the foregoing, we are of opinion that appellants sufficiently present the record in their brief to make it apparent that it was error to peremptorily instruct a verdict for the plaintiff, and thus bring in review the whole record. Searcy v. Grant, 90 Tex. [97] 102, 37 S.W. 320; Fuqua v. Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L.R.A. 241; Texas & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S.W. 871, 34 S.W. 919. There is authority for the proposition that fundamental error need not be assigned. Wilson v. Johnson, 94 Tex. 272, 60 S.W. 242; City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518."

■ On appellee's motion, we file the following supplemental findings of fact: (a) When appellee, through his wife, made application for this insurance, and at the time she made the application, she told appellant's agent that the house would become vacant in the future or would be occupied by a tenant in the future. In support of this fact conclusion we quote as follows from Mrs. Dickson's testimony, questions and answers reduced to narrative:

"I am the wife of J. W. Dickson. About the ninth day of July, 1932, I went to see Jack Motley about an insurance policy. My husband told me to attend to that business. He was in on a weekend, and we had talked about it quite a bit; we had been carrying insurance and just carelessly let it drop. I was getting ready to move away from Tenaha at that time; my husband was then employed in Gladewater. I went by and talked with Jack Motley. That was the time he issued the insurance policy to me, on the ninth day of July; I went to the bank and told Jack, I said 'Jack, we are moving to Gladewater, and I want to insure my house,' and he asked me he says 'Do you have a renter for your house,' and I said 'No.' I went to see Jack Motley for the purpose of getting an insurance policy. While that policy was being issued I told him the house was going to be vacant, and he asked me did I have a renter, and I said I did not. He offered to get me a renter, if he could. It was five days from the time I got the policy until we moved; I got the policy on the 9th and moved on the 14th. Between those days Jack Motley brought me a prospective renter; it was a Mr. Kamack; Jack

came with them to my house. I can't place that date; it was between Sunday and Thursday.

"The policy was issued on the 9th. And I moved out on the 14th. It was either Monday or Tuesday that Jack Motley brought Mr. Kamack to my house; it was about the third or fourth day after I got the policy. We were then in the act of moving; we had moved out a load on Sunday before he brought this Mr. Kamack down there. Mr. Kamack and Mr. Motley went through my house. At that time a part of my furniture was gone and the rest of it was packed, and I told them to excuse the condition of the house as we had moved a part of the stuff and had the rest of it packed to move. Mr. Motley, at that time, did not raise any objection to my insurance policy. Nothing was said about cancelling the policy at that time, or forfeiting it."

Appellee, J. W. Dickson, testified, questions and answers reduced to narrative: "My name is J. W. Dickson. I am the plaintiff in this case. I live in Gladewater. Prior to moving to Gladewater I lived at Tenaha. I moved from Tenaha to Gladewater on the 14th of July, in 1932. I remember while I was busy engaged in moving I was holding my job up there at Gladewater. I sent my wife to see Jack Motley, an agent of defendant; I don't remember the exact date, but it was some few days before we moved, I think, as well as I remember, the policy was written on the 9th day of July, but I told her to go before that date. I told her to go see Jack Motley on or about that date and to tell Jack just what we were going to do. I told her to tell Jack we were moving from Tenaha to Gladewater, and fix a policy, if he could."

On the issue that, after the policy was written, appellee notified appellant's agent that the house was to be occupied by a tenant, he testified as follows:

"Q. Now, when you finally went to move, and were in the act of moving, state whether or not you went by to see the local agent, Jack Motley? A. Yes sir.

"Q. Just tell us what happened, at that time? A. Well, when we left, my wife and brother, there, and myself—we were together, and drove up there in the car, to the bank, and I had a little business there, and I wanted to get what little money I had, and Jack Motley waited on me, and he said 'What do you want,' and I said 'I am moving,' and he said 'are you on your way now,' and I said 'yes,' and he said 'is there anybody moving into your house,' and I said, 'Yes, Aubrey Rivers has done moved part of his things, and will get the rest of them this evening, and we are going to Gladewater this evening.' "

(b) About three days after the policy was issued, Jack Motley, who was appellant's agent, carried a prospective renter to look at the house, at which time appellee and his wife were in the act of moving out of the house, some of their household goods were crated and a part had been removed. The issue was clearly raised in this connection that Jack Motley visited the house, not as appellant's agent in connection with the insurance policy, but as appellee's agent in finding a tenant for the property. (c) The policy was issued on the 9th day of July, 1932, and the premium paid; appellee and his wife moved to Gladewater on the 14th day of July, 1932, and did not return until after the fire on the 14th day of October, 1932. Apellant's agent, Jack Motley, knew when appellee moved from the insured property, and that he was residing in Gladewater, and was not occupying the house in Tenaha; in this connection the issue was raised that Motley dealt with the property, after the policy was issued and the information acquired by him, as appellee's agent in trying to secure a renter. Though Motley knew that appellee was moving out of the property and had no tenant, and that the property would be vacant or occupied by a tenant, he did not know, either as appellee's agent in securing a tenant or as appellant's agent in writing the policy, how long the property would be vacant. (d) Appellee did not know until after the house was destroyed by fire that it was vacant at the time of the fire. (e) The court excluded appellee's testimony to the effect that the house was vacant at the time of the fire, on the ground that it was hearsay. Appellee has asked us to conclude that his knowledge of that fact was "hearsay." We cannot make that conclusion. Appellee returned to Tenaha when notified that the house had been burned and investigated the vacancy as a fact issue for his own information. (f) Appellee owned the house; the policy was duly issued; the premium was duly paid, and appellant kept the premium; the house was totally destroyed by fire on October 14, 1932; proof of loss was made by appellee and liability denied by appellant.

(g) Appellee has requested that we make the following fact conclusion: "That there was no legitimate testimony to the effect that the house in question had been vacant for more than ten days before the fire." This request must be denied. Our original opinion accurately reflects the testimony on that issue.

Appellee's motion for rehearing is in all things overruled, except as reflected by this opinion. Appellant has also filed a motion for rehearing which, after a careful review, is in all things overruled.