## KYLE v. JACKSON.
### No. 4890.

Court of Civil Appeals of Texas.
El Paso.

July 23, 1952.

Rehearing Denied Aug. 13, 1952.

Andress, Lipscomb & Peticolas, El Paso, Richard L. Toll, Pecos, for appellant.

J. M. Preston, Pecos, for appellee.

SUTTON, Justice.

This is an appeal from the District Court of Reeves County.

From 1903 to 1922 Mrs. Kyle and her husband operated a ranch in Loving County, Texas, a portion of which is involved in this litigation. On the death of the husband in 1922, Mrs. Kyle assumed the active operation of the ranch and continued until she sold the major portion thereof to Mr. Jackson, June 1, 1948. Mr. Jackson acquired in the sale 16 640-acre sections totaling 10,240 acres. Lying south of the lands sold Mrs. Kyle owned all of sections 13 and 24 in Block 56, Township 2 T. & P. Ry. Co. Surveys, lying east of the Pecos River, totaling approximately 724 acres. This 724 acres was, together with other lands, fenced as a trap. (A trap is a small pasture of limited acreage usually used to contain saddle horses and milch cows, and other livestock at times which need to be easily accessible.) The location of those portions of Sections 13 and 24 owned by Mrs. Kyle and the situation of the trap, together with other adjoining lands is illustrated by the following sketch. Mrs. Kyle and Mr. Jackson differ somewhat on the location of the north fence line of the trap, but it is undisputed and undenied that there was a trap. Mr. Jackson located his north line of the trap as indicated by the capital letters B which he inserted while testifying on a sketch. Mrs. Kyle's north line is identified K. to K.

The trap was in use as early as 1918, continuously until the sale to Mr. Jackson. The Sheriff of Loving County who worked on the Kyle Ranch in 1918, thought it a

little smaller than indicated by Mrs. Kyle, the north line thought to be a little south of where she located it. Mr. Lindley, a ranch neighbor, thought the Sheriff more nearly correct about the size of the trap. There is no dispute about the south line of the trap.

Section 1 on our sketch belongs to the T. & P. Ry. Co.; Section 6 is also a T. & P. Section but it is leased by Mr. Lindley, the ranch neighbor. The north 360 acres of Section 5 is leased by Mr. Jackson and the south 280 by Mr. Lindley. Section 12 is owned by the Johnson Estate and Mr. Jackson testified he was trying to make a deal for it. Section 7 is a T. & P. section, and leased by Mr. Lindley. Mr. Lindley owns Sections 8 and 18. All portions of those sections owned or leased by Mr. Lindley and contained within the trap were so contained with his knowledge and consent.

Some thirty days after the sale of the Kyle Ranch to Mr. Jackson he removed the north trap fence, wherever located, and exposed Mrs. Kyle's 724 acres and the remainder of the trap to the livestock ranging on the Kyle Ranch proper as acquired by Mr. Jackson. Mrs. Kyle testified she expressly reserved the trap from the sale, pointing it out specifically to Mr. Jackson. Mr. Jackson testified, as he understood it, she reserved three tracts of land and he thought one on him (meaning, we take it, within the body of land purchased by him from Mrs. Kyle); one on Mr. Lindley, and one on Sid Kyle, son of Mrs. Kyle, but that he subsequently discovered two were on him.

No portion of the north trap fence was situated on lands belonging to Jackson, nor to Mrs. Kyle, unless it may be the short portion along or near the common line of Sections 12 and 13. Mr. Jackson consulted no one, nor gave any notice of his purpose to remove the fence but removed it of his own volition without any notice whatsoever, saying he owed no one any notice; that he had bought the ranch and the fences with it.

Mr. Lindley testified he was familiar with the location of the trap and its opera-tion; that he knew nothing about the details of the sale to Jackson but assumed he got the entire ranch, and after the removal of the fence Mr. Jackson talked to him about the use of the lands he owned or controlled within the boundaries of the trap and he advised Mr. Jackson it was all right; that his situation was just the same as before; that had he known Mrs. Kyle had not sold 13 and 24 and had retained the trap he would not have agreed to the removal of the fence and had not as yet withdrawn his consent for her to use his lands, because it had never been mentioned.

Mrs. Kyle brought this suit in trespass to try title to 13 and 24 and to recover damages for the removal of the fence, claiming it, and for the wrongful use of her lands by Mr. Jackson. The trial was to the Court without a jury and judgment that Mrs. Kyle recover her portions of 13 and 24, Mr. Jackson having asserted no claim thereto, and that she take nothing on her claim for damages and that she pay all costs of suit. Mrs. Kyle has appealed.

The trial court filed Findings of Fact and Conclusions of Law. He found as a fact Jackson removed a fence running in a northerly direction from the Pecos River across Sections 12, 7 and 5, which is assumed to be the Kyle north line, because the next finding is Jackson had permission to use the land situated on each side of the fence removed in Sections 7 and 5. The trial court further found the fence removed did not separate or divide lands owned or leased by Mrs. Kyle from other lands owned or leased by her, nor did it separate or divide plaintiff's lands from lands owned or leased by others, and did not adjoin any land owned by her; that the fence did not separate or divide lands owned or used by plaintiff from land the defendant had permission to use, and that the fence did not belong to plaintiff. Plaintiff requested the Court to further find the value of the fence removed; whether or not defendant's cattle grazed upon plaintiff's land after the removal of the fence; the reasonable rental value of the land used, and the amount of damages sustained as a result of the use of the

lands. The request was declined on the grounds they would be inconsistent with the findings already made on the controlling issues in the case and there was insufficient evidence to support such findings.

Plaintiff has briefed three points, the first of which is the court erred in refusing to make additional findings on matters concerning which there is an abundance of evidence; secondly, the error of the court in refusing damages for the removal of the fence which caused defendant's cattle to use plaintiff's land, which constituted a trespass thereon, and lastly the error of the court in signing Findings of Facts having no support in the evidence and contrary to the great and overwhelming weight of the evidence, naming the findings.

 We think the trial court did not err in failing to find damages for the value of the fence, because he found the fence was not on lands belonging to the plaintiff, and most of it was indisputably on lands owned and controlled by Mr. Lindley and was a part of the land, International & G. N. Ry. Co. v. McIver, Tex.Civ.App., 40 S.W. 438, (e. r.) and Long v. Chapman, Tex. Civ.App., 151 S.W.2d 879, no writ history, and could not be removed except with the consent of the owner of the land. For the same reason Mr. Jackson had no right to remove the fence. The only evidence in the record Mr. Jackson had permission to remove the fence is that Mr. Lindley said it was all right and was all right for Jackson to use the lands south of the fence which were under his control. We have already pointed out this came after the removal of the fence and was based on the belief Jackson had acquired all the Kyle Ranch. Neither of the sections, 12, 7 and 5, upon which the trial court found the fence to be, belonged to Mr. Lindley. They were leased. Under all the evidence before the court the removal of the fence was without authority and wrongful.

We have already noted the enclosure within the trap had been maintained for many, many years by Mrs. Kyle and with the express consent of Mr. Lindley to so maintain it and use the lands be-

longing to him or controlled by him within the trap, and that such consent has never yet been withdrawn. For this additional reason Mr. Jackson was legally wrong when he removed the fence and exposed the enclosure of Mrs. Kyle to his livestock, and rendered it impracticable for her to use her lands. The facts of this case bring it clearly within the rule announced in Clarendon Land, Investment & Agency Co., v. McClelland, 86 Tex. 179, 23 S.W. 576 (T), 22 L.R.A. 105, and Jameson v. Board, Tex.Civ.App., 171 S.W. 1037 (no writ history) and the several cases there cited, to the effect that if anyone willfully causes his livestock to go upon the lands of another and remain there he is guilty of an illegal trespass and responsible for the damages resulting therefrom. There is no finding of the court, nor evidence in the record which relieves the defendant in this case from that rule.

It is accordingly ordered the judgment of the trial court be reversed and the cause remanded.